RILEY (CHARLES L.), Plaintiff and Respondent, vs. STANDARD OIL COMPANY OF INDIANA, Defendant and Appellant.

RILEY (WOLCOTT), Plaintiff and Respondent, vs. STANDARD OIL COMPANY OF INDIANA, Defendant and Appellant.

RILEY (JANET STARK), Plaintiff and Respondent, vs. STANDARD OIL COMPANY OF INDIANA, Defendant and Appellant: DELAWARE UNDERWRITERS, Defendant and Respondent.

*December 7, 1933—January 9, 1934.*

16

For the appellant there was a brief by *Wilcox & Wilcox* of Eau Claire, and oral argument by *Roy P. Wilcox.*

For the respondents Riley there was a brief by *Chas. E. Briere* and *Goggins, Brazeau & Graves,* all of Wisconsin Rapids, and oral argument by *Theo. W. Brazeau.*

*Bird, Smith, Okoneski & Puchner* of Wausau, for the respondent Delaware Underwriters.

ROSENBERRY, C. J. The four principal contentions of the defendant may properly be stated together since a solution of the questions raised by them requires an examination of the facts in some detail.

It is contended, first, that there was no connection between the negligence claimed and the burning of plaintiffs' property, that is to say, that there was no showing that the failure of defendant to spade the ground or to cut the grass and weeds between the warehouse and the south line of defendant's property had any causal relation to the fire; second, that there is no evidence to sustain, except upon conjecture, the conclusion that the Lemley and Riley houses were ignited by materials carried to them from the burning warehouse; third, that no actionable negligence on the part of the defendant is proven; and fourth, that assuming negligence on the part of the defendant and causal connection between this negligence and the burning of defendant's warehouse, and assuming further that burning particles of oil ignited the Riley house, the results were so unusual and abnormal so far as plaintiffs' injuries were concerned as to exclude the element of foreseeability.

In outline, the facts are that the defendant used a large wooden building in the city of Wisconsin Rapids for the storage of barrels of oil, grease, and other inflammable

products. To the north and east there were a considerable number of dwelling houses and other structures situated within three to four hundred feet of the warehouse. South of the warehouse and for a considerable distance west of it there were vacant lots grown up to weeds and grass. Between the south end of the warehouse building and the south line of defendant's property was a strip of land twenty-five feet in width, and a cinder driveway twenty-seven feet in width leading north to a city street ran along the west side of the warehouse. From this it appears that there was substantial protection to the warehouse from a running grass fire on the west and that there was a space of twenty-five feet on the south, which if grown to weeds and dry grass could easily communicate a grass fire to the defendant's warehouse. Plaintiffs' property is some four hundred feet northeast of the warehouse of the defendant and lies across Grand avenue, which is a full-width paved street. For some considerable time—some of the evidence indicates as much as a year and a half—prior to the day in question, there had been a smoldering fire in a peet bog some distance south and west of defendant's warehouse. This fire would occasionally light up and the fire department of the city of Wisconsin Rapids would then attempt to extinguish the fire but were never wholly successful. On the day in question just before noon, this fire started up, and because of a strong southwesterly wind, variously rated at from twenty to twenty-five miles per hour, it got out of control and swept through the dry grass, weeds, and other vegetation in the direction of defendant's warehouse. Some distance south of the defendant's warehouse was the building known as the engine house of the old Bender mill. There is some dispute as to the line which the fire followed, but it eventually reached and set fire to the defendant's warehouse. The defendant contends that it is a matter of conjecture whether the grass fires were communicated to the building by the grass and

weeds adjacent to the building or whether it was a high fire which reached over the intervening space and so set fire to the building. Some time after the warehouse began to burn, the Riley house and garage were set on fire and here again there is a dispute, the defendant claiming that there is no evidence other than conjecture upon which to base the conclusion that the fire was caused by burning substances from the defendant's warehouse rather than burning grass or leaves or from other burning structures in the vicinity.

Upon a careful review of the evidence it is considered that there is a jury question, first, as to whether the defendant spaded the ground or cut the grass; second, as to whether the fire communicated to the warehouse by means of the long dry grass and weeds adjacent to the building; and finally, whether the Riley house was burned by fire communicated from the burning warehouse. No useful purpose will be served by setting out in detail the evidence with respect to these questions.

The most serious contention raised here other than the sufficiency of the evidence to support the verdict relates to the matter of causal connection between the defendant's negligence, that is, the defendant's failure to cut the weeds and grass and spade the ground, and the burning of plaintiffs' property. The jury found that the defendant's warehouse was set on fire by a grass fire, that in the exercise of ordinary care the defendant was required to cut the grass and weeds and spade the ground, and found that negligence in each respect was the cause of the burning of the Riley house. Seasonably upon the trial the defendant requested the court to submit to the jury an inquiry as to whether or not the Riley house was ignited by burning oil and grease stored in the warehouse of the defendant. It was the defendant's claim upon the trial that even if it should be found that the fire was communicated to the warehouse through the burning of the grass and weeds rather than overhead, there was evidence in the case which showed that the Riley house was ignited be-

fore the oil and grease in the warehouse took fire; that therefore the Riley house would have been destroyed even had there been no oil and grease stored in the warehouse and there was therefore no causal connection between the storage of the oil and grease and the destruction of plaintiffs' property. The contention of the defendant, in other words, is that in order to recover the plaintiffs were obliged to establish that plaintiffs' property was destroyed by a fire set from oil and grease, and that if it was set by burning particles of the building before the oil and grease were ignited there was no liability.

The law of negligence with respect to causation is stated in secs. 306 and 307, Tentative Draft No. 8, Restatement of Torts, American Law Institute, as follows:

"The actor's negligent conduct is a cause of another's injury if his conduct is a substantial factor in bringing it about." Disregarding an exception not material here, "the actor's negligent conduct is not a substantial factor in bringing about another's injury if it would have been sustained even if the actor had not been negligent."

The jury found upon competent evidence that the defendant in the exercise of ordinary care, in view of the use to which it put the building in question, was required to cut the grass and weeds and spade the ground to the south of its warehouse. It was the failure to perform this duty which resulted in the communication of the fire to the warehouse as found by the jury. There is abundant evidence to sustain a finding that as a result of the burning of the warehouse the plaintiffs' property was destroyed. It was not incumbent upon the plaintiffs to go further and show that their property was destroyed as a result of burning oil and grease. While the presence of oil and grease imposed the duty in the exercise of ordinary care to cut the weeds and grass and spade the ground, if the plaintiffs established that the failure to perform that duty was a substantial factor in the destruction of the

plaintiffs' property, it sustained the burden of proof and established a direct causal relation between the failure of the defendant to perform its duty and the injuries sustained by the plaintiffs. The injuries would not have been suffered by the plaintiffs if the defendant had discharged its duty under the facts as found by the jury. Quite another question would be presented if in violation of a valid ordinance the defendant had stored oil and grease in a wooden warehouse. The defendant had the legal right to store oil and grease in a wooden warehouse under the circumstances of this case, but when it did so, the exercise of ordinary care required it to guard against the hazard thereby created. It is quite probable that in a case where oils and grease are stored in violation of law, it would be necessary, in order to establish liability on that ground, that the injuries sustained must be shown to result from the burning of the oil and grease. That is not the situation here. The duty in such a case is not to store the oil and grease. The duty of the defendant in this case was to cut the grass and weeds and spade the ground, duties of an entirely different sort. The jury having found upon competent evidence that the warehouse was set on fire as a result of the failure to cut the weeds and grass and spade the ground, it was only necessary for the plaintiffs to show, in order to establish liability, that as a result of the warehouse being set on fire the plaintiffs' property was destroyed. The defendant argued here that its duty was confined to protecting the plaintiffs' property against the consequences of burning oil and grease. This was not the measure of defendant's duty. Its duty was under the circumstances to use ordinary care to prevent the warehouse from being set on fire by the presence of dry weeds and grass and incumbered ground. The fact that that duty was imposed because oil and grease were stored upon the premises does not affect the causal connection between defendant's negligence and the injuries sustained by the plaintiffs. The failure of the court to submit a question

inquiring whether the fire was set from the warehouse before the oil and grease were ignited was not error. If the plaintiffs' injuries were sustained by reason of defendant's failure to perform its duty, that is sufficient connection to establish defendant's liability to the plaintiffs.

Relying upon the rule laid down in *E. L. Chester Co. v. Wisconsin P. & L. Co.* 211 Wis. 158, 247 N. W. 861, the defendant further contends that in the absence of a finding, the plaintiffs' property was destroyed as a result of the burning of the petroleum products stored in the warehouse; that the element of foreseeability or reasonable anticipation is wanting because it was highly improbable that the plaintiffs' property would have been destroyed except as a result of the burning of petroleum products. In support of this contention the defendant urged that it maintained a warehouse bounded on the west by a wide cinder road; that there was adjacent to it a railway right of way and a considerable extent of untenanted land; that to the north of its own property was a sixty-six-foot concrete paved street with sidewalks; that the distance from the defendant's property to the Lemley property was over three hundred feet and that it was over five hundred feet to the Riley premises; that under such circumstances, the defendant, as a matter of law, should not have been required to foresee that its negligence to spade the ground and cut the grass and weeds on a narrow strip of its own land would result in injury to the plaintiffs except by the ignition of burning oil and grease. This contention, at least in part, supports defendant's contention with respect to causation and is therefore in part at least disposed of by the considerations already stated. There is nothing in the *Chester Company Case* which supports defendant's contention if it be established that the defendant was guilty of a want of ordinary care under the circumstances; the defendant was as a matter of law not required to anticipate that others might be

injured by the burning of a highly inflammable building. It was not required to anticipate the precise nature of the injuries which might result from its failure to exercise ordinary care but it was bound to anticipate some injury. It was not held in the *Chester Company Case* that the injuries which resulted from the defendant's failure to exercise ordinary care excused the defendant from liability as a matter of law. It was held that the whole question was not properly submitted to the jury and the cause was remanded for a new trial. The facts in this case do not present the happening of an event of such an extraordinary and unusual nature that it may be said as a matter of law that the plaintiffs' injuries could not have been foreseen as was the case in *Fox v. Koehnig,* 190 Wis. 528, 209 N. W. 708. The only unusual circumstance here was the velocity of the wind. While there is evidence that there was a considerable gale, there is nothing to indicate that it was unprecedented or one not to be expected in the ordinary course of events.

We have considered other matters urged here on behalf of the defendant and find no reversible error.

*By the Court.*—Judgment affirmed in each case.