**RAYONIER INCORPORATED, a Corporation, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14329.**

United States Court of Appeals Ninth Circuit.

Sept. 1, 1955.

Rehearing Denied Oct. 14, 1955.

5. Footnote 3, supra, 195 F.2d at page 642.

Holman, Mickelwait, Marion, Black & Perkins, Lucien F. Marion, Burroughs B. Anderson, Seattle, Wash., for appellant.

Warren E. Burger, Asst. Atty. Gen., Paul A. Sweeney, Alan S. Rosenthal, Samuel D. Slade, Sondra K. Slade, Attys., Department of Justice, Washington, D. C., Charles P. Moriarty, U. S. Atty., F. N. Cushman, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before BONE, ORR and HASTIE, Circuit Judges.

ORR, Circuit Judge.

Appellant filed an original and amended complaint in the trial court seeking to recover damages against the United States. The amended complaint, says appellant, alleges a cause of action within the area in which the United States has waived its sovereign immunity from suit under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671–2680. The damages claimed are for property losses.

On motion the trial court dismissed the action on the ground that the complaint failed to state a claim against the United States on which relief can be granted.

We summarize the pertinent allegations of the amended complaint. Appellee, hereafter Government, is and was at all material times the owner of vast timber forests situate on the Olympic Peninsula of the State of Washington. These forests are administered and patrolled by the Forest Service, a branch of the Department of Agriculture. The Port Angeles Western Railroad is the owner of various railroad rights of way across the public lands, which rights of way are subject to a right of "control" and "free access" held by the United States. Appellant, hereafter Rayonier, is a Delaware corporation with extensive timberland holdings in the State of Washington, principally on the Olympic Peninsula.

On August 6, 1951, sparks emitted by a passing locomotive ignited a fire along the railroad's right of way. The Chief United States Forest Ranger was immediately notified and assumed control of the fire fighting activities, which control he continued to exercise during the entire period of fire fighting. The fire spread first to sixty acres of public land, where it was confined until August 7th. It then flared up and spread to a 1600-acre tract, not alleged to be government owned. By August 11th the fire was "contained and controlled". It smoul-

dered in the 1600-acre tract until September 20th. On September 20th it flared up again, escaped from the 1600-acre area and caused the alleged injuries to Rayonier's land.

It is further alleged that the Chief Forest Ranger committed numerous wrongful acts and omissions in the course of fighting the fire on the 1600-acre tract. The amended complaint avers that he failed to employ sufficient men and equipment although there was an ample supply available, and that the proper utilization of such available man power and material would have resulted in the extinguishment of the fire.

In addition, Rayonier seeks to predicate liability on the Government's alleged negligent failure to maintain the roadbed of the railroad in safe condition, its failure to maintain adjoining public lands in safe condition, its failure to perform the fire fighting duties required of a landowner, and its failure to fight the fire according to the duty of care which the law requires of a volunteer.

■ The crux of our inquiry is whether the allegations of the amended complaint brings the case within the ambit of the Tort Claims Act. The trial court in deciding that they do not relied upon the holding in the case of Dalehite v. United States, 1953, 346 U.S. 15, 73 S. Ct. 956, 97 L.Ed. 1427. While much is alleged as to the origin of the fire, negligence of the United States in failing to keep the railroad right of way clear of inflammable matter as well as negligence in failing to control the early spread of the fire, we read the amended complaint in its entirety as picturing a situation wherein the operation occurring after the fire had spread to the 1600-acre plot is determinative of the liability of the Government, if any. The fire, after reaching

the 1600-acre tract, smouldered for more than a month, flared up again and reached appellant's property. In our opinion it was this recurrence of fire on the 1600-acre tract which was the sole proximate cause of the injury to appellant's property and that risks, if any, created by the acts or omissions of agencies of the Government prior to the containment of the fire in the 1600-acre area had terminated.[1] Here the complaint alleges that the fire was "contained and controlled." It is alleged that men, equipment and water, for more than a month, were available to extinguish it. Failure to extinguish the fire is alleged to be due to the negligent refusal to employ the available resources and to use ordinary judgment. Paragraph XXXII of the complaint states that:

"The fire and all burning material within the 1600-acre area and especially in the westerly portion of said area and in the landing described in paragraph XXI above could have been completely extinguished between the dates of August 11 and September 19, 1951 and the fire which broke loose on September 20, 1951, could have been avoided, by the use and employment of more men, tools, equipment, water and supplies, and such men, tools, equipment, water and supplies were available and could have been so used and employed by the District Ranger Floe and his subordinates."

On these facts, liability may not be predicated on conduct occurring before the spread of the fire to the 1600-acre tract.

Having reached the conclusion that failure to completely extinguish the fire after it had been contained within the 1600-acre tract for approximately six weeks was the sole proximate cause of the injuries to appellant's property, we

---

1. "In general, when a third person becomes aware of the danger, and is in a position to deal with it, the defendant will be free to assume that he would act reasonably." Prosser, Torts, 1941, 367; Cook v. Seidenverg, 1950, 36 Wash.2d 256, 217 P.2d 799; see, Crowley v. City of Raymond, 1939, 98 Wash. 432, 88

P.2d 858; Lehman v. Maryott & Spencer Logging Company, 1919, 108 Wash. 319, 184 P. 323. Cf. Pittsburg Reduction Co. v. Horton, 1908, 87 Ark. 576, 113 S.W. 647, 18 L.R.A.,N.S., 905, and Ryan v. New York Central R.R. Co., 1866, 35 N.Y. 210, 91 Am.Dec. 49.

now give attention to the allegation that the failure to completely extinguish and contain the fire within said tract was due to the negligence of the fire fighters. These men were Forest Service employees and functioning as public firemen. Under the circumstances was their employment such as to render the Government liable in the same manner and to the same extent as a private individual would be and thus within the provision of the Tort Claims Act, 28 U.S.C.A. § 2674?

In the Dalehite case, supra [346 U.S. 15, 73 S.Ct. 972], the Supreme Court construed the act with reference to an analogous fact situation. There suit was brought to recover damages for negligence on the part of government officials in the manufacture and shipment of ammonium nitrate fertilizer. The fertilizer exploded while stored aboard ship in the harbor of Texas City, Texas. The Coast Guard attempted to put out the fire but failed. It was charged with taking inadequate measures to control the blaze. The Supreme Court denied relief. We set forth a portion of the opinion of the Supreme Court:

> "As to the alleged failure in fighting the fire, we think this too without the Act. The Act did not create new causes of action where none existed before.

> "'* * * the liability assumed by the Government here is that created by "all the circumstances," not that which a few of the circumstances might create. We find no parallel liability before, and we think no new one has been created by, this Act. Its effect is to waive immunity from recognized causes of action and was not to visit the Government with novel and unprecedented liabilities.' Feres v. United States, 340 U.S. 135, 142, 71 S.Ct. 153, 157, 95 L.Ed. 152.

> "It did not change the normal rule that an alleged failure or carelessness of public firemen does not create private actionable rights. Our

analysis of the question is determined by what was said in the Feres case. See 28 U.S.C. §§ 1346 and 2674, 28 U.S.C.A. §§ 1346, 2674. The Act, as was there stated, limited United States liability to 'the same manner and to the same extent as a private individual under like circumstances'. 28 U.S.C. § 2674, 28 U.S.C.A. § 2674. Here, as there, there is no analogous liability; in fact, if anything is doctrinally sanctified in the law of torts it is the immunity of communities and other public bodies for injuries due to fighting fire. This case, then, is much stronger than Feres. We pointed out only one state decision which denied government liability for injuries incident to service to one in the state militia. That cities, by maintaining fire-fighting organizations, assume no liability for personal injuries resulting from their lapses is much more securely entrenched. The Act, since it relates to claims to which there is no analogy in general tort law, did not adopt a different rule. See Steitz v. City of Beacon, 295 N.Y. 51, 64 N.E.2d 704, 163 A.L.R. 342. To impose liability for the alleged nonfeasance of the Coast Guard would be like holding the United States liable in tort for failure to impose a quarantine for, let us say, an outbreak of foot-and-mouth disease."

The control of conflagrations on forest lands is as much a public function as the fighting of shipboard fires or of pestilence in time of epidemics. We conclude that the Forest Rangers in fighting the fire acted in the capacity of public firemen. The Forest Service engages in extensive fire protection programs. It assists state foresters by subsidies and consultation; it conducts nationwide fire prevention campaigns; it carries on extensive research into techniques and devices for fire prevention and suppression. The service has entered into several agreements similar to the one alleged to be in force here whereby it assumes the state function of suppres-

sing fires on all lands within a particular area, whether publicly or privately owned. We see no distinction between non-liability of the United States for negligence of the Coast Guard in fighting fires and analogous negligent conduct by the Forest Service. In our opinion the Dalehite case compels the conclusion that the Government, when intervening in the prevention and control of forest fires, may not be said to assume the common law obligation of a volunteer.

We do not regard the fact that the United States had by prior agreement with the State of Washington undertaken to protect against forest fires as creating a distinction, rendering the Dalehite case inapplicable. In entering into the agreement, even if it be considered a binding contract (the complaint falls short of alleging a binding contract, and there is no allegation of consideration for the Government's promise) the Government did no more than undertake to perform services in a public capacity. Cf. National Manufacturing Co. v. United States, 8 Cir., 1954, 210 F.2d 263.

Having concluded that the alleged neglect of the firemen to use reasonable methods to control the fire within the 1600-acre tract was the proximate cause of the spread of the fire to appellant's lands, and that inasmuch as the fire fighters were acting as public servants to the extent that their activities were without the area of the waiver of sovereign immunity contained in the Tort Claims Act, we might well conclude this opinion. But Rayonier makes other claims which we proceed to discuss.

The principal allegations in this respect relate to the failure of the Government to keep the railroad right of way (the starting point of the fire) and adjoining public lands free and clear of inflammable material and, once the fire started, failure to take proper precautions to extinguish it before it reached the 1600-acre tract.

■■ It is alleged that liability may be predicated on the Government's failure to maintain the Railroad's right of way in satisfactory condition. The right of way held by the Railroad was at least equivalent to an easement.[2] Ordinarily the servient estate is under no duty to make repairs, the duty resting on the dominant tenant who alone is liable for injury to third parties.[3] The allegation in the complaint that the Government had a right to enter and inspect the right of way does not alter this. Reservation of such a right is not equivalent to an assumption of the obligation to repair and maintain the right of way. The servient tenant does not undertake to clean up such rubble as the Railroad may accumulate. Cases dealing with the law of landlord and tenant cited by the appellant are not persuasive, for example, see Appel v. Muller, 262 N.Y. 278, 186 N.E. 785, 89 A.L.R. 477.

■ The Government, under the allegations of the complaint, was an adjoining landowner to whose property fire, ignited on the property of a third party, has spread. At common law an adjoining landowner is not liable to third parties for failure to anticipate negligent acts of his neighbor and maintain and utilize his lands accordingly. Rayonier has cited no cases where such a liability was imposed. Cases such as Prince v. Chehalis Savings & Loan Association, 1936, 186 Wash. 372, 58 P.2d 290, affirmed 186 Wash. 377, 61 P.2d 1374, cited by Rayonier deal with the liability of a landowner on whose property fire breaks out because of the existence of fire hazards and are distinguishable.

2. Great Northern Ry. Co. v. United States, 1941, 315 U.S. 262, 62 S.Ct. 529, 86 L. Ed. 836; Himonas v. Denver & R. G. W. R. Co., 10 Cir., 1949, 179 F.2d 171; see also, Jones, Easements, 1898, § 208; Tiffany, Real Property, 3rd ed. 1939, § 772, and cases cited.

3. Reed v. Alleghany Co., 1938, 330 Pa. 300, 199 A. 187, 189. See, also, Herzog v. Grosso, 1953, 41 Cal.2d 219, 259 P. 2d 429; Strauss v. Thompson, 175 Kan. 98, 259 P.2d 145; 2 Thompson, Real Property, 1939, § 680; 3 Elliot, Railroads, 1921, § 1750; Jones, Easements, 1898, §§ 821, 831.

There is a division of authority on the question of whether failure to maintain safe conditions on adjoining land may constitute contributory negligence in a suit by such landowner to recover against the party responsible for the fire. In Leroy Fibre Co. v. Chicago M. & St. P. Ry. Co., 1914, 232 U.S. 340, 34 S.Ct. 415, 58 L.Ed. 631, the United States Supreme Court held as a matter of law that plaintiff's stacking of inflammable flax near a railroad right of way did not constitute contributory negligence. This holding has been cited with approval and applied in recent cases.[4] Other recent cases apply a different rule.[5]

In Riley v. Standard Oil Co. of Indiana, 1934, 214 Wis. 15, 252 N.W. 183, liability was imposed upon a person who neither started the fire nor owned the land on which it occurred. The court there accepted the jury's determination that the defendant, who had stored grease and oil in a warehouse next to a wide field of uncut grass despite knowledge that for over a year a fire had smouldered in a peet bog a short distance away, was liable to a plaintiff whose house was set afire by burning particles from the defendant's warehouse. The defendant was held negligent for failure to cut the grass. That case is an extreme one. The point in question was assumed by the court without reference to authorities or arguments. The law has been traditionally reluctant to visit extensive liabilities on those directly responsible for the occurrence of fire. See Ryan v. N. Y. Central R. R. Co., 1866, 35 N.Y. 210. Cases dealing with contributory negligence are in conflict. In our opinion a failure to maintain safe conditions on property adjoining a railroad right of way does not render one liable for damages because the fire spread across his land to other land.

Appellant cites R.C.W. § 76.04.-370 and 76.04.450, and §§ 5807 and 5818, Rem.Rev.Stats.[6] These provisions purport to impose liability on a private landowner for failing to take steps to remedy substandard conditions on his property

4. See Atlas Assurance Co., Ltd. v. State, 102 Cal.App.2d 789, 229 P.2d 13; and Kleinclaus v. Marin Realty Co., 94 Cal. App.2d 733, 211 P.2d 582.

5. See Stephens v. Mutual Lumber Co., 1918, 103 Wash. 1, 173 P. 1031, where failure on the part of the adjoining landowner to remove his property after notice of the outbreak of fire was held to bar his recovery, and Nashville, C. & St. L. R. v. Nants, 1933, 167 Tenn. 1, 65 S.W.2d 189.

6. Rem.Rev.Stats. § 5807, and § 5818:
"§ 5807. Cut-over lands as public nuisance—Abatement—Cost as lien—Notice before suit—Excepted lands. Any land in the State of Washington covered wholly or in part by inflammable debris created by logging or other forest operations, land clearing, and/or right of way clearing and which by reason of such condition is likely to further the spread of fire and thereby endanger life or property, shall constitute a fire hazard, and the owner or owners thereof and the person, firm or corporation responsible for its existence are required to abate such hazard. Nothing in this section shall apply to lands for which a certificate of clearance, under section 2 of chapter 207, Laws of 1929 (section 5792-1 of Reming-

ton's Revised Statutes; section 2569-1 of Pierce's Code), has been issued.
"If the owner or person, firm or corporation responsible for the existence of any such hazard shall refuse, neglect or fail to abate such hazard, the state supervisor of forestry may summarily cause it to be abated and the cost thereof and of any patrol or fire fighting made necessary by such hazard may be recovered from said person, firm or corporation responsible therefor or from the owner of the land on which such hazard existed by an action for debt and said costs shall also be a lien upon said land and may be enforced in the same manner, with the same effect and by the same agencies as the lien provided for in section 3 of chapter 105, Laws of 1917 (section 5806 of Remington's Revised Statutes; section 2581 of Pierce's Code): Provided, That said summary action hereinbefore referred to may be taken only after twenty (20) days' notice in writing has been given to the owner or reputed owner of the land on which the hazard exists either by personal service on said owner or by registered letter addressed to said owner at his last known place of residence."
"§ 5818. Forests and timber protected. All forests and timber upon all lands in

but have no application here. Secs. 5807 and 5818 impose liability without fault. No defense based on the reasonableness of the conduct proscribed is provided. The Dalehite case, 346 U.S. at pages 44, 45, 73 S.Ct. at page 972, holds that the Federal Tort Claims Act does not waive the immunity of the United States in such actions.[7]

▮▮▮ ▪ In the instant case the amended complaint predicates liability on the failure by the Government to take adequate steps to control the fire when it had spread to public lands and before it reached the 1600-acre tract. We fail to find a case wherein a landowner was held liable to third parties for failure to fight a fire spreading across his land from the land of another. Cases cited by appellant deal with the duties of a landowner on whose property the fire broke out. To hold an intermediate landowner liable for damage to property caused by fire passing over his land, to all parties subsequently damaged notwithstanding the efforts of public firemen to extinguish the fire, would be to impose a harsh rule.

▮▮▮ Sec. 5806, Rem.Rev.Stat. of Washington,[8] R.C.W. 76.04.380, does not change the common law so as to impose such a liability. The duty it imposes becomes operative upon the receipt of a written demand. The penalty exacted is reimbursement to the state of expenses

---

the state of Washington, lying west of a line one mile west of the eastern boundary of range ten west of the Willamette Meridian and north of the north boundary lines of Grays Harbor county, shall be protected and preserved from the fire hazard to which they are or may be exposed by reason of the unusual quantity of fallen timber upon such lands. It shall therefore be unlawful for any person, firm, company or corporation, their officers, agents or employees, to do or commit any act which shall expose any of the forests or timber upon such lands. to the hazard of fire."

7. "* * *. there is yet to be disposed of some slight residue of theory of absolute liability without fault. This is reflected both in the District Court's finding that the FGAN constituted a nuisance, and in the contention of petitioner here. We agree with the six judges of the Court of Appeals, [In re Texas City Diaster Litigation, 5 Cir.,] 197 F.2d 771, 776, 781, 786, that 'the Act does not extend to such situations, though of course well known in tort law generally. It is to be invoked only on a 'negligent or wrongful act or omission' of an employee. Absolute liability, of course arises irrespective of how the tortfeasor conducts himself; it is imposed automatically when any damages are sustained as a result of the decision to engage in the dangerous activity. The degree of care used in performing the activity is irrelevant to the application of that doctrine. But the statute requires a negligent act. So it is our judgment that liability does not arise by virtue either of United States ownership of an 'inherently dangerous commodity' or property, or of en-

gaging in an 'extra hazardous' activity. United States v. Hull, 1 Cir., 195 F.2d 64, 67."

8. § 5806, Rem.Rev.Stat. of Washington, R.C.W. 76.04.380:

"§ 5806. Uncontrolled fires as nuisances—Abatement and lien for cost. Any fire on any forest land in the State of Washington burning uncontrolled and without proper precaution being taken to prevent its spread is hereby declared a public nuisance by reason of its menace to life or property. Any person, firm or corporation, responsible for either the starting or the existence of such fire is hereby required to control or extinguish it immediately, without awaiting instruction from a forest officer, and if said responsible person, firm or corporation shall refuse, neglect or fail to do so, the supervisor of forestry or any fire warden or forest ranger acting with his authority, may summarily abate the nuisance thus constituted by controlling or extinguishing the fire and the cost thereof may be recovered from said responsible person, firm or corporation by action for debt and, if the work is performed on the property of the offender, shall also constitute a lien upon said property. Such lien may be filed by the supervisor of forestry in the office of the county auditor and foreclosed in the manner provided by law for the foreclosure of liens for labor and material. It shall be the duty of the prosecuting attorney for the county to bring such action for debt, or to foreclose such lien, upon the request of the supervisor of forestry.

"When a fire occurs in a logging operation, such fire shall be fought to the full limit of available employees, as may

incurred by it in fire fighting activities. A method of securing reimbursement is provided. No liability is placed on the landowner, with or without written notice, to third parties where public fire fighters take inadequate measures in their attempt to subdue the blaze.

The judgment of dismissal is affirmed.

be necessary, and such fire fighting shall be continued with the necessary crews in such numbers as are, in the opinion of the state forester, or his authorized deputies, sufficient to bring such fire to a

patrol basis, and such fire shall not be left without such fire fighting crew or fire patrol until authority so to do has been granted in writing by the supervisor of forestry, or his authorized deputies."