**SCHMIDT v. UNITED STATES et al.**

**No. 10581.**

United States Court of Appeals
Seventh Circuit.

July 3, 1952.

Rehearing Denied Aug. 6, 1952.

Jay E. Darlington, Hammond, Ind., John R. Jeffers, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

FINNEGAN, Circuit Judge.

Appellant seeks to reverse an order of the District Court which dismissed his action against the United States brought under the Federal Tort Claims Act.

The complaint alleges that the plaintiff-appellant is a citizen, resident and inhabitant of the United States within the Northern District of Illinois, Eastern Division, and that he is and was at the time of the happenings and events complained of the owner and holder of 1,000 shares of the capital stock, Class A, of the Tucker Corporation, which he purchased from said corporation on the date of its issue. He charges that he begins and prosecutes the proceedings as a derivative stockholder's action because said corporation, and those in charge of its affairs, have been and are unwilling and unable to do so. He alleges that the action is not collusive.

The Tucker Corporation is alleged to be a corporation for profit, having its principal office and place of business in Chicago, Illinois, within said district.

It is charged that the Securities and Exchange Commission is an agency of the United States of America.

Upon information and belief plaintiff-appellant alleges that in the spring and summer of 1948, Tucker Corporation was preparing to start "mass production of a new type, rear-engine automobile, which

would compete in interstate commerce with the products of other automobile manufacturers." It is also charged on information and belief that the said corporation was then "particularly vulnerable to the type of interference and injury hereinafter described," because, in preparation for production, it had invested "most of its original cash capital in tangible and intangible assets, including machinery and equipment, inventory of material, engineering and advertising expenses, and rental." Said corporation, it is said, was then lessee and occupant of a large plant and had started the initial production of parts, and "pilot-type" models of its automobile. Its cash was running low, but it had 2,000 dealers and distributors owing a balance of nearly $4,000,000 on their franchise notes; it enjoyed good commercial and financial relations with concerns doing business with it, and it is said that it had good business relations with the automobile buying public from the sale of its accessories; that it could, and, in the normal course of events, would have succeeded in going forward with the mass production of its automobile.

It is then charged, again on information and belief, that from the summer of 1948, up to and until March 3, 1949, the Securities and Exchange Commission, and "the members and agents thereof, engaged in a course of conduct toward said corporation which was of such character that in the normal course of events it would have and did interfere with and injure and destroy said corporation's business." It is alleged that said course of conduct consisted, among other things, of the following: (1) That they gave out surreptitiously, or caused or permitted to be given out, to a radio broadcaster, the statement that said corporation was about to be investigated, knowing that the statement would be broadcast on a nationwide hookup; (2) that in the summer of 1948, they began and carried forward an inquisition against said corporation, its business and its product, in the course of which they interfered with and interrupted the corporation's use of its records and files; they intimidated the persons and dealers doing business with the corporation; they caused to be propagated a rumor that the corporation was tainted with fraud and illegality; (3) that about March 1, 1949, one of the members of the Commission surreptitiously took from its files "a supposedly secret report" of said inquisition and turned it over to the representative of a Detroit newspaper who publicized the contents thereof.

The complaint then continues:

"It is presently impossible for this plaintiff to describe in more detail the aforesaid course of conduct referred to in this paragraph (b), because the facts constituting the same are peculiarly within the knowledge and possession of the defendant and its said agency and agents."

The complaint then goes on to allege alternatively, and still upon information and belief, that the tortuous acts in question were committed by the Commission, its members and agents, or by them in concert with other agencies of the United States, including the Department of Justice, or by them in concert with persons and "concerns" not connected with the Government, who desired the destruction of said corporation's business.

The complaint then charges, still on information and belief, that said course of conduct was entered into and carried out with intent to destroy said corporation in its business; and with intent to prevent the manufacture and competition of its product in interstate commerce, and with wilful and wanton disregard of the consequences which would and did result therefrom.

Damages were then claimed in the sum of $50,000,000. The complaint asserts that "there has been inflicted upon said corporation: (1) The common law tort of injuring and destroying its business; (2) the statutory tort of preventing the manufacture and sale of its product in interstate commerce, contrary to federal anti-trust laws, but this action seeks only compensatory and not punitive damages for this latter tort."

The complaint then alleges in division 5 thereof:

"(a) This cause of action has been abandoned in fact and in law by the corporation's trustee to the corporation on and since February 20, 1951, and has

thereby reverted to the corporation, and said abandonment was in fact made by the trustee with the approval of the court."

Relative to the inability of the corporate management to sue, the complaint alleges in division 5(b) that shortly after the trustee abandoned this cause of action to the corporation, the plaintiff stockholder informed all the available officers and directors of the corporation of the trustee's abandonment and of the existence of this cause of action. He made demand on them to have the corporation sue upon it before it became outlawed and lost, but they took no action.

It then charges:

"Further, as plaintiff is informed and believes, said corporate management and board of directors is presently incapable of taking action and will not take action in this matter before this cause is outlawed and lost, because of the fact that they are widely scattered and have not met for a long time and are not likely to meet for the conduct of this or other corporate affairs, due to aforesaid destruction of the corporation's business. Plaintiff has exhausted all means within his knowledge and command, except by this action, to have said cause of action filed on behalf of the corporation before it becomes outlawed and lost. Accordingly, it is necessary that this stockholder's action be filed forthwith in order to preserve this cause of action from being lost to the corporation."

In division 6, the complaint alleges that the corporation is made a formal defendant in order to meet the requirements of a stockholder's suit and to bring it before the court, but that the action is really for its benefit and no relief is sought adverse to it or to its property.

The United States met this complaint by moving to dismiss the same on the following grounds:

(1) The complaint fails to state a claim against the defendant, United States of America, upon which relief can be granted.

(2) That the court lacks jurisdiction because the United States of America has not waived its immunity from suit or consented to be sued upon the claim set forth in the complaint.

(3) The plaintiff does not have the capacity to sue on behalf of the Tucker Corporation or its stockholders; and

(4) The claim is barred by the statute of limitations contained in 28 U.S.C.A. § 2401, since it arose more than two years prior to the filing of the complaint herein.

The District Court sustained the Government's motion and dismissed the complaint at plaintiff's costs.

Appellant in support of his contention that the complaint states a case which entitled the Tucker Corporation to relief directs our attention to what this court said in Asher v. Ruppa, 7 Cir., 173 F.2d 10, on page 12:

"* * * The law is now settled that upon motions to dismiss a complaint on the ground that it does not state a claim upon which relief can be granted, the complaint should be construed in the light most favorable to the plaintiff, with all doubts resolved in his favor and the allegations accepted as true. Cool v. International Shoe Co., 8 Cir., 142 F.2d 318. And if, in view of what is alleged, it reasonably can be conceived that plaintiff can upon the trial make a case which would entitle him to some relief, the complaint should not be dismissed. Montgomery Ward & Co. v. Langer, 8 Cir., 168 F.2d 182, 185; * * * and Carroll v. Morrison Hotel Corp., 7 Cir., 149 F.2d 404."

We propose to apply the test thus laid down to the facts alleged in the complaint here under attack.

It charges a course of conduct by the Securities and Exchange Commission, its members and agents, or by them in connection with other agencies and employees of the Government, or by them in connection with potential competitors of Tucker Corporation in the automobile manufacturing industry, which scheme of conduct in the normal course of events would and did

interfere with and destroy the business of Tucker Corporation. Three specifications as to the nature of the course of conduct charged are pointed out. It is first alleged that in the spring of 1948, they (that is the Commission and its agents and their alleged associates) gave out, or permitted to be given out to a radio broadcaster, information that the Tucker Corporation was about to be investigated for fraud and violation of the law in the management of its business, and that said information was immediately broadcast on a nationwide hookup.

In the second specification, it is alleged that in the early summer of 1948 they (the same persons indicated in the first specification) began and carried forward an inquisition against the Tucker Corporation and its business, and that in the course of such inquisition they interfered with the corporation's use of its records and instituted and propagated a rumor that the Tucker Corporation business was tainted with fraud and illegality.

The third and final specification is that about the first of March, 1949, they (the same persons) took from the files and publicized a "supposedly" secret report of the inquisition conducted by the Securities and Exchange Commission and delivered the same to a representative of a Detroit newspaper.

The Securities Act of 1933, as amended, provides: 15 U.S.C.A. § 77t.

"77t * * * (a) Whenever it shall appear to the Commission, either upon complaint or otherwise, that the provisions of this subchapter, or of any rule or regulation prescribed under authority thereof, have been or are about to be violated, it may, in its discretion, either require or permit such person to file with it a statement in writing, under oath, or otherwise, as to all the facts and circumstances concerning the subject matter which it believes to be in the public interest to investigate, and may investigate such facts."

In section 78u of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78u, it is provided:

"(a) The Commission may, in its discretion, make such investigations as it deems necessary to determine whether any person has violated or is about to violate any provision of this chapter or any rule or regulation thereunder, and may require or permit any person to file with it a statement in writing, under oath or otherwise as the Commission shall determine, as to all the facts and circumstances concerning the matter to be investigated. The Commission is authorized, in its discretion, to publish information concerning any such violations, and to investigate any facts, conditions, practices, or matters which it may deem necessary or proper to aid in the enforcement of the provisions of this chapter, in the prescribing of rules and regulations thereunder, or in securing information to serve as a basis for recommending further legislation concerning the matters to which this chapter relates."

■ The manifest purpose of the Securities Act is to protect the public against imposition or fraud in the sale of securities in interstate commerce. Oklahoma-Texas Trust v. Securities and Exchange Commission, 10 Cir., 100 F.2d 888. Moreover, the Act provides that any person hurt by an order of the Commission may petition the Court of Appeals of the United States, in the district wherein such person resides, that such order may be modified or set aside.

The Federal Tort Claims Act, 28 U.S.C.A. § 1346 give the district courts of the United States jurisdiction of civil actions "on claims against the United States, for money damages, accruing on or after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

The question now arises, did the facts alleged in the complaint here in question charge a negligent or wrongful act or omission on the part of any employee of the

Government within the scope of his employment? Under the terms of the Securities Exchange Act above quoted the Commission has discretion to direct or file, or cause to be filed, a statement or complaint in writing concerning a matter which it believes to be in the public interest to investigate. It has the power to make such an investigation. It is authorized to publish information concerning violations of the Act.

■ The act charged in the first specification of conduct complained about is that of giving out information that an investigation was about to be instituted. This is clearly and specifically within the discretionary powers and duties of the Securities and Exchange Commission. The statute quoted authorized such conduct as that charged in the first specification.

In the second specification, the charge is that an investigation was instituted. The investigation is now called an "inquisition." Again the Commission was acting clearly within the scope of its discretionary authority. The same thing is true as to the third act. The conduct complained of in this specification is publishing the report of the investigation or "inquisition." This also is in terms authorized by the specific language of the Securities and Exchange Act. Moreover, the Federal Tort Claims Act, 28 U.S.C.A. § 2680, provides:

"The provisions of this chapter and section 1346(b) of this title shall not apply to—(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

It seems therefore to be perfectly clear that under the terms of the applicable statutes the plaintiff in this controversy cannot upon a trial establish a case which would entitle the Tucker Corporation to damages from the Government. What we have said sufficiently disposes of the first and second grounds upon which the Government sought to dismiss the complaint, and it makes it unnecessary for us to consider the third and fourth grounds.

Because the complaint fails to state a claim against the United States upon which relief can be granted, the judgment of the District Court is affirmed.