Eugene **DUPREE,** Appellant,

v.

The **UNITED STATES.**

No. 12147.

United States Court of Appeals Third Circuit.

Argued April 2, 1957.

Decided June 10, 1957.

Rehearing Denied July 11, 1957.

William J. Woolston, Philadelphia, Pa., for appellant.

Lester S. Jayson, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., W. Wilson White, U. S. Atty., Philadelphia, Pa., Paul A. Sweeney, Attorneys, Department of Justice, Washington, D. C., on the brief, for appellee.

Before MARIS, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

Can an action be maintained against the United States for damages under the Federal Tort Claims Act on a claim arising out of the enforcement of the merchant seaman screening program, which resulted in the allegedly wrongful withholding of a security clearance by the Commandant of the Coast Guard acting pursuant to the recommendations of hearing boards performing functions under regulations promulgated by the Commandant?

That is the question presented on this appeal from the judgment of the District Court for the Eastern District of Pennsylvania granting the motion of the United States to dismiss the complaint. The district court held that the claim was barred by the discretionary function exception of the Federal Tort Claims Act.[1]

In order to test the legal validity of the complaint, the allegations of fact therein are taken as admitted and may be summarized as follows:

Eugene Dupree was a licensed ship's master from 1930 through 1956 by virtue of a license granted to him by the United States Coast Guard.[2] In September, 1950, Dupree applied for a berth as a ship's master, but the Coast Guard refused to issue to him the validated document required for employment in the merchant marine. On May 23, 1951, he was advised by the Coast Guard that the validated document had been denied because the Commandant of the Coast Guard had determined that there was reason to believe that he had been affiliated with or was sympathetic to an organization, group or combination of persons subversive or disloyal to the Government of the United States. This determination was made without affording Dupree a hearing.

Dupree subsequently requested and was given a hearing for the purpose of establishing that he was not affiliated with or sympathetic to an objectional organization. Neither prior to nor at the hearing was he advised upon what information the Commandant had based his determination.[3] Thereafter Dupree invoked the appeal procedures. At no time was he confronted with any witnesses or evidence in support of the Commandant's determination despite his repeated denials of the charges.

In November, 1955, the Commandant reversed the determination against Dupree making him eligible for employment as a ship's master. Dupree then instituted an action against the United States in the Court of Claims. The motion of the United States to dismiss that complaint was sustained for failure to state a claim within the class of cases cognizable in the Court of Claims.[4]

The instant action was instituted in the district court as a "Complaint in Trespass" under the Federal Tort Claims Act. That act provides:

28 U.S.C. § 1346(b). "[T]he district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 2674. "The United States shall be liable, respecting the

---

1. Dupree v. United States, D.C.E.D.Pa. 1956, 146 F.Supp. 148.

2. The Coast Guard issues licenses pursuant to 46 U.S.C.A. § 226.

3. During the course of the appeal proceedings Dupree was given a "Bill of

Particulars" setting forth the specific data upon which the adverse determination was based. The "Bill of Particulars" is quoted in full in Dupree v. United States, Ct.Cl.1956, 141 F.Supp. 773.

4. Ibid.

provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

Dupree sought $100,000 damages for loss of earnings, for legal and other expenses incurred in obtaining his clearance, for an alleged incurable physical disability resulting from the nervous strain he underwent while clearance was withheld, and for the humiliation, disgrace and consequent pain and suffering as a result of the determination that he was affiliated with subversive or disloyal groups.

Both the United States and Dupree have in essence based their contentions upon the question of the applicability of the discretionary function exception of the Tort Claims Act which is set forth in the second part of 28 U.S.C. § 2680(a), and which excludes recovery under the act for

"Any claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

Viewing the complaint as we do, that exception is not exclusively critical to the disposition of this case for the reasons set forth below.

Dupree was denied a security clearance under the merchant seaman screening program which is administered by the Coast Guard under the authority of the Magnuson Act,[5] and Executive Order 10173, as amended.[6] Pursuant to this authority the Commandant of the Coast Guard promulgated regulations to enforce the security program.[7]

The Magnuson Act was enacted by Congress in August, 1950 during the Korean crisis. It provides that whenever the President finds that the security of the United States is endangered by reason of actual or threatened war, or by reason of subversive activity, or of disturbances in the international relations of the United States, he may issue rules and regulations to safeguard vessels and waterfront facilities against destruction from sabotage or other subversive acts. Pursuant to this act the President issued Executive Order 10173 in which he prescribed regulations relating to the protection and security of vessels, harbors and waterfront facilities.

The regulations, as amended, authorized the Commandant of the Coast Guard to require that licensed officers and certified men employed on merchant vessels of the United States be holders of specially validated documents reflecting their security clearance. The regulations further provided:

"No person shall be issued a document required for employment on a merchant vessel of the United States nor shall any person be employed on a merchant vessel of the United States unless the Commandant is satisfied that the character and habits of life of such person are such as to authorize the belief that the presence of the individual on board would not be inimical to the security of the United States; Provided, That the Commandant may designate categories of merchant vessels to which the foregoing shall not apply."[8]

The implementing regulations promulgated by the Commandant of the Coast Guard set forth detailed procedures for the enforcement of the Executive Order. Application for security clearance was to be in writing and was to contain certain specified information.[9] Without af-

5. 64 Stat. 427 (1950), 50 U.S.C.A. § 191.

6. 33 C.F.R. (1955 Supp.) Part 6.

7. Id. Part 121.

8. Id. § 6.10–1.

9. Id. § 121.13(b).

fording the applicant a hearing, the Commandant could deny the applicant a security clearance on certain specified grounds.[10] However, whenever security clearance was denied, the applicant was to be notified in writing and a statement of the basis of the initial determination was to be included, but not "with such particularity as to disclose the source of such information or data, nor the identity of any person or persons who may have furnished such information or data, to said person or other persons."[11]

Any person who was denied a security clearance under these regulations was given rights of appeal [12] to a Local Appeal Board which was composed of one representative of the Coast Guard, one representative of management, and one representative of labor, so far as practicable.[13] The Board was to furnish the appellant with a written notification as to the data on which the adverse determination had been made, subject to the restrictions concerning the disclosure of the source of the information or the identity of the persons furnishing it.[14] The hearings were to be held with due regard to the security of the United States, and the technical rules of evidence did not apply.[15] After hearing, the Board was to transmit its recommendation, together with its reasons, to the Commandant who then could either approve or reject the recommendation or remand the case for further proceedings. The Commandant would notify the applicant of the decision.[16] If the decision was adverse to the applicant, an appeal was allowed to the National Appeal Board which also conducted hearings and transmitted its recommendation to the Commandant.[17] The final authority to grant or deny security

clearance was vested in the Commandant.[18]

It is alleged that in applying these regulations to Dupree he suffered great injury. Whatever the extent of that injury no legal duty arises upon the part of the United States to reimburse him unless provision has been made therefor in the Federal Tort Claims Act or other compensatory constitutional or statutory provisions. The complaint against the United States is entitled "Complaint in Trespass" and it is alleged that "[t]his action sounds in tort * * *." It contains no allegations of negligence, nor does it describe any conduct of any employee of the Government as being wrongful. The allegations in substance merely state the alleged insufficiencies in the administrative procedure such as the failure to afford a hearing prior to the initial determination, the lack of advice to Dupree upon what information the Commandant based his determination, the failure to confront Dupree with any witnesses or evidence in support of the Commandant's determination, and, generally, unconstitutional denial to Dupree of property rights through application of the procedure to him.

█ In seeking damages from the United States under the Federal Tort Claims Act, recovery is not precluded by the fact that the claim involves a uniquely governmental activity. Rayonier, Inc. v. United States, 1957, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354; Indian Towing Co. v. United States, 1955, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48. The fact that there is no counterpart in private law for the governmental activity creates a problem in applying the local tort law as required in 28 U.S.C. § 2674. Proof

10. Id. § 121.13(d).

11. Id. § 121.15(e) (1) (3), as amended Nov. 3, 1953, 18 Fed.Reg. 6941. The "Bill of Particulars" referred to in Note 3, supra, was not required prior to this amendment.

12. 33 C.F.R. § 121.17.

13. Id. § 121.19(a).

14. Id. § 121.21(a) (3) (i), as amended Nov. 3, 1953, 18 Fed.Reg. 6942, Feb. 5, 1954, 19 Fed.Reg. 674. See Note 11, supra.

15. 33 C.F.R. § 121.23.

16. Id. § 121.25.

17. Id. §§ 121.27, 121.29.

18. Id. § 121.31.

of negligence in failing to fight a forest fire [19] or in the operation of a lighthouse light [20] involves concepts of local law which may be adapted to such situations without great difficulty. It is in a regulatory situation such as presented in the instant case that the perplexities in ascertainment of the tort in accordance with local law become more apparent. But stripping such situation of its governmental foliage, extraction of the tort where one exists is not an insurmountable difficulty. Whether it be negligence or an intentional tort, the court must characterize the situation in terms the local law will permit.[21] Here Dupree hoped to prove that something was done to him as a result of negligence or an intentional tort, both of which are bases for an action under the Tort Claims Act.[22]

■ The allegations in Dupree's complaint, however, do not permit the application of any local law in characterizing the alleged tort since the act provides that the actions of government employees acting within a statutory or regulatory framework are not a basis for a claim even if the statute or regulations be invalid. The first part of 28 U.S.C. § 2680(a) contains this exceptionary clause:

"Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid * * *."

The above clause is concerned with acts of government employees exercising due care in executing the provisions of a statute or regulations, whether valid or invalid. Dalehite v. United States, 1953, 346 U.S. 15, 33, 73 S.Ct. 956, 97 L.Ed. 1427. Where government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act, Powell v. United States, 10 Cir., 1956, 233 F.2d 851; Schmidt v. United States, 7 Cir., 198 F.2d 32, certiorari denied, 1952, 344 U.S. 896, 73 S.Ct. 276, 97 L.Ed. 693; Smith v. United States, D.C.Colo.1951, 101 F. Supp. 87, appeal dismissed 10 Cir., 1952, 196 F.2d 222; except where they do not exercise due care, Hatahley v. United States, 1956, 351 U.S. 173, 181, 76 S.Ct. 745, 100 L.Ed. 1065.[23]

■ In an action for declaratory and injunctive relief, the Ninth Circuit ruled the regulations here involved to be invalid. Parker v. Lester, 1955, 227 F.2d 708. However, the Tort Claims Act did not contemplate "that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort."[24] Nor did it contemplate a remedy for damages sustained by reason of the application of invalid laws or reg-

19. Rayonier, Inc. v. United States, 1957, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354.

20. Indian Towing Co. v. United States, 1955, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48.

21. Cf. Aleutco Corp. v. United States, 3 Cir., 1957, 244 F.2d 674.

22. 28 U.S.C. § 2680(h) excepts from the act many of the intentional torts. However, certain torts in trespass and a tort sounding in conversion are still proper theories for recovery against the United States. Aleutco Corp. v. United States, supra; see Hatahley v. United States, 1956, 351 U.S. 173, 181, 76 S.Ct. 745, 100 L.Ed. 1065.

23. In the Hatahley case the Secretary of the Interior, pursuant to the Taylor Graz-

ing Act, 48 Stat. 1269 (1934), 43 U.S.C.A. § 315, promulgated regulations to provide for the most beneficial use of the public range and to protect grazing rights. In enforcing the regulations, government employees did not give the notice required by the regulations prior to destruction of horses belonging to Hatahley and others. This failure to comply with the regulations was not within the meaning of "due care" envisaged by the exception.

24. See H.R.Rep. No. 2245, 77th Cong., 2d Sess. 10; S.Rep. No. 1196, 77th Cong., 2d Sess. 7; H.R.Rep. No. 1287, 79th Cong., 1st Sess. 5-6; Hearings before House Committee on Judiciary on H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess. 33.

ulations. Here the alleged insufficiencies in the administrative procedure and its execution were consistent and in accordance with the regulations promulgated by the Commandant of the Coast Guard.[25] There is no allegation of lack of due care in the application of the regulations to Dupree. That being so, Dupree cannot make out a claim based upon the actions of officials enforcing the regulatory scheme. Since his claim is based upon nothing more than the invalidity of the regulations under which his security clearance was processed, it is precisely the type of claim which Congress intended to exclude, and recovery is accordingly barred.

■ The United States and Dupree in the district court and here argued the question of the applicability of the discretionary function exception. Whether or not that part of the exception in § 2680(a) is applicable to the official representatives enforcing the regulations of the Commandant need not be decided in view of the applicability of its first part. The discretionary function exception has been a confusing one in meaning and in application.[26] Due to the paucity of facts upon which to determine the extent of discretion exercised by the various officials acting with respect to Dupree, this is not a proper case to test the applicability of that exception.[27] Therefore, as to all those officials, reliance need be placed only on the first part of the exception since there is no indication of proof to be presented that those employees did not exercise due care in carrying out the regulations.

■ As to the Commandant of the Coast Guard, however, the discretionary function exception is clearly applicable. Whether the claim be based upon the wrongful denial of a security clearance or upon the promulgation of unreasonable and unconstitutional regulations, it is barred.

The duty of determining whether a security clearance should be given or denied was vested in the Commandant by the Executive Order.[28] This determination by the Commandant was the product of an exercise of judgment, an action involving discretion within the meaning of the exception.[29] Furthermore, the conduct of the administrative process which provided the basis for the Commandant's determination was the result of procedures judged by the Commandant to be best fitted for the purpose. This segment of the Commandant's judgment was also within the meaning of the discretionary function exception. Little more need be said about this phase of Dupree's claim since it is apparent that it was not the intention of Congress to encompass it within the periphery of the Tort Claims Act.[30]

25. For a detailed discussion of the prior security clearance procedure, see Brown and Fassett, Security Tests for Maritime Workers, 62 Yale L.J. 1163, 1172–1179 (1953). New regulations were promulgated by the Commandant on May 1, 1956, 29 Fed.Reg. 2814, 33 C.F.R. (1956 Supp.) Part 121.

26. Note, 66 Harv.L.Rev. 488 (1953).

27. Unlike Dalehite v. United States, 1953, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427, where the Supreme Court had the benefit of evidence as to the duties of the various government employees involved.

28. Note 8 supra.

29. Dalehite v. United States, supra, 73 S. Ct. at page 967, 346 U.S., at page 34, 97 L.Ed. 1427.

30. See Hearings before House Committee on Judiciary on H.R. 5373 and H.R. 6463, 77th Cong., 2d Sess. 33. Analogous situations existed in Dalehite v. United States, supra (cabinet-level decision to institute a fertilizer export program; failure of the Coast Guard and other agencies to regulate the storage or loading of the fertilizer in a different fashion from that used); Schmidt v. United States, 7th Cir., 198 F.2d 32, certiorari denied, 1952, 344 U.S. 896, 73 S.Ct. 276, 97 L.Ed. 693 (decision by the Securities and Exchange Commission to investigate and publish information concerning a corporation); Matveychuk v. United States, 2d Cir., 195 F.2d 613, certiorari denied, 1952, 344 U.S. 845, 73 S.Ct. 61, 97 L.Ed. 657 (Office of Price Administration denial of rent increase).

**826**

■ Dupree has also urged the Fifth Amendment of the Constitution as grounds for recovery from the United States. However, claims, for the amount involved, against the United States based upon the Constitution are within the jurisdiction of the Court of Claims which has already ruled on the validity of Dupree's constitutional theory.[31]

For the reasons stated the judgment of the district court will be affirmed.

---

31. 28 U.S.C. § 1491. See Note 4 supra.