William H. FRENTZ, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 5270.

United States District Court
E. D. Louisiana,
New Orleans Division.

July 1, 1958.

Frederick J. Gisevius, Jr., George M. Leppert, New Orleans, La., for plaintiff.

M. Hepburn Many, Norman W. Prendergast, New Orleans, La., for defendant.

J. SKELLY WRIGHT, District Judge.

William H. Frentz, age 78, was injured while on foot crossing the St. Claude Avenue Bridge across the Industrial Canal in New Orleans. This bascule-type drawbridge is under the control of the U. S. Engineers and was operated at

the time in question by employees of the War Department of the United States. This suit, brought under the Federal Tort Claims Act,[1] alleges negligence on the part of these employees in the operation of the bridge causing injury to the plaintiff. The accident occurred when Frentz, caught on the bridge while it was being raised, jumped from the rising end to the concrete roadway, six to eight feet below.

The bridge in question is located in a thickly populated area of the city and forms part of a thoroughfare carrying heavy vehicular and pedestrian traffic. The bridge runs generally in an east to west direction and, in addition to the lanes for automobile traffic, has two lanes for pedestrians, one on each side. The bridge is operated from a control tower located on its north side. From his control position, the operator of the bridge can see out on all traffic lanes, pedestrian as well as automobile. In addition, there is a second employee known as a lockman whose duty it is to remain on the surface of the bridge itself to signal the approach of water traffic in the canal as well as to advise the operator when the bridge is clear of all automobile and pedestrian traffic for raising. The bridge is also equipped at the entrance and exit of each lane with a safety gate which bars entrance to the lane when the gate is placed by the bridge operator in a horizontal position. When the safety gates are placed in a horizontal position, alarms ring and danger signals light, indicating that all traffic is barred from the bridge while it is being raised.

At the time of the accident, 8:15 A.M., on August 11, 1954, Frentz, a retired Government worker, entered the south pedestrian lane of the bridge from the east. He passed the safety gate which was then in a vertical position and had proceeded across the stationary part of the bridge to the hinge of the movable section, some 72.8 feet from the safety gate, when he heard warning gongs being sounded. He immediately looked behind and saw that the safety gate through which he had come, as well as the gates for the vehicular traffic lanes on the bridge, were down and the danger lights were on. He thereupon looked over at the control tower of the bridge wherein he saw the operator. He understood the operator to yell at him, "Go on ahead, Cap." He proceeded ahead, quickening his pace only to find as he approached the end of the movable section of the bridge, 93 feet from its hinge, that it was beginning to rise. He completed the 10 to 12 feet to the end and jumped off, landing on the concrete roadway 6 to 8 feet below, severely injuring himself.

While several witnesses saw Frentz after he was on the movable portion of the bridge and before he made his jump, neither the operator of the bridge in the control tower nor his assistant, the lockman, whose duty it was to advise the operator when the bridge could be raised, saw him at any time. In fact, neither knew there had been an accident until he was told. The operator's attention at the time in question was apparently directed to a car going east which had crossed the movable portion of the bridge but was stopped, under the counterweight, on the stationary section by the lowered safety gate at the exit. The operator, after lifting the safety gate, admits calling to the stranded motorist to go ahead off the bridge. He admits he may have referred to the motorist as "Cap." The operator denies having told Frentz, the plaintiff here, to go ahead across the bridge for the simple reason that he did not know that Frentz was on the bridge. In the confusion, however, Frentz apparently thought the operator was telling him, rather than the motorist, to go ahead across and acted reasonably, under the circumstances, in attempting so to do. The reason the lockman did not see Frentz on the bridge was that the lockman, at the time in question, had abandoned his duties as lookout and was engaged somewhere in the superstructure of the bridge greasing its bearings.

1. 28 U.S.C. § 1346(b).

■ Although under the Federal Tort Claims Act the liability of the Government is measured by the same tests of negligence as would apply to a private individual under like circumstances under the law of the place where the accident occurred, Rayonier, Inc., v. United States, 352 U.S. 315, 77 S.Ct. 374, 1 L.Ed.2d 354, the proof here makes out a case of negligence against the bridge employees irrespective of what standard is used. It seems rather fundamental that a bridge should not be raised while a pedestrian is on the movable portion thereof. And the fact that at the time the bridge operator's attention was engaged with a stranded automobile and his lookout was greasing the bearings of the bridge does not absolve them of their negligent failure to see what they could have and should have seen before raising the bridge. It is the law of Louisiana,[2] as it is generally,[3] that operation of a dangerous instrumentality in disregard of life and property is negligence and the bridge here, though not intentionally, was so operated.

■ The defense of contributory negligence made by the Government herein fails for want of proof. The Government makes the veiled suggestion that Frentz came on the bridge after the safety gate was down, but there is no evidence to support that suggestion. The only evidence on this point is from Frentz himself and he says that he was 72 feet past the gate when it was lowered. Assuming that there was some negligence on the part of the plaintiff in being on the bridge at the time in question, the fact remains that the bridge employees should have seen him there and acted to protect his safety. The Louisiana doctrine of last clear chance conforms to the doctrine generally. It recognizes the duty to discover the peril of another and to avoid injury if there is a reasonable opportunity so to do. In short, the doctrine requires that a negligent defendant be held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril or unaware of it through carelessness had, in fact, a later opportunity than the plaintiff to avoid the accident. Brown v. Louisville & Nashville R. Co., D.C., 135 F.Supp. 28, affirmed 5 Cir., 234 F.2d 204; Jackson v. Cook, 189 La. 860, 181 So. 195. Here, unquestionably, the bridge tenders had the last clear chance to avoid this accident. While the plaintiff scurried helplessly to reach the end of the rising bridge, the bridge tenders oblivious of his plight, merely continued raising it.

■■ The only difficult question in this case is one of quantum. The plaintiff is now 78 years old. He has suffered grievous injuries, some of which will persist for the remainder of his life. As a result of the accident, he was in the hospital over two months. He was in traction at home for some time after that. He wore a cast on his legs for eleven months. He wears a steel leg brace at times even yet. Without doubt he has suffered great pain and will continue to be uncomfortable during the short period of life left him. It should also be noted on the question of quantum, however, that there is no claim for loss of earnings. The claim for special damages is in the amount of $1,722.99, $818.16 of which is valid.[4] Considering the plaintiff's age and his life expectancy, as well as the seriousness of his injuries, pain and suffering, and the extent of disability resulting from his injuries, his award in damages is fixed at $12,818.16.

Judgment for plaintiff.

2. Hogg v. Department of Highways of the State, La.App., 80 So.2d 182; Le Blanc v. Louisiana Highway Commission, La. App., 5 So.2d 204.

3. 8 Am.Jur., Bridges § 68.

4. The doctor bills of $30 and $50 are disallowed because they cover examinations in preparation for trial rather than treatment. Moncrieff v. Lacobie, La.App., 89 So.2d 471. The Charity Hospital bill of $834.36 is prescribed. LSA-C.C. 3538.