James M. PERRODIN, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 2:04–0112–23.

United States District Court, D. South Carolina.

Nov. 19, 2004.

---

John Hughes Cooper, Sullivans Island, SC, Cain Denny, Nancy A. Chiles, Nancy A. Chiles Law Office, Charleston, SC, for plaintiff.

Peter F. Frost, U.S. Department of Justice, Torts Branch Civil Division, for defendant.

### *ORDER*

DUFFY, District Judge.

This matter is before the court upon Defendant United States of America's (hereinafter "Government") motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). For the reasons set forth herein, the Government's motion is denied.

## I. BACKGROUND

The events in this complaint occurred on board the M/V CAPE EDMONT, a public vessel of the Government. On February 8, 2002, the Government removed Plaintiff James M. Perrodin ("Perrodin") for cause from his position as Chief Steward aboard the M/V CAPE EDMONT. Perrodin was discharged for improper food handling when two officers became sick after eating a meal prepared by him. The Government states that on several previous occasions, it reprimanded Perrodin for employing improper food handling procedures. Perrodin contends that he had a sample of the disputed meal tested and an outside laboratory determined that the meal was not poisoned. Perrodin also alleges that after he was fired, the Government's agents "spread the word" to the vessel's crew members, as well as crew members of another ship, that Perrodin was fired for food poisoning. (Compl. ¶ 30.) On January 13, 2004, Perrodin filed a complaint for defamation against the Government under the Suits in Admiralty Act ("SIAA"), 46 U.S.C. app. § 741 et seq. On September 15, 2004, the Government filed this motion to dismiss for lack of subject matter jurisdiction. Perrodin has responded, and thus disposition of the motion is appropriate.

## II. STANDARD OF REVIEW

■ When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the complaint fails to state facts upon which jurisdiction can be found, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir.1982). The plaintiff has the burden of proving jurisdiction, and the court may go beyond the face of the complaint and consider evidence without converting the motion into one for summary judgment. *Richmond, Fredericksburg & Potomac R. Co. v. U.S.,* 945 F.2d 765, 768 (4th Cir.1991).[1]

## III. DISCUSSION

The Government's arguments in support of dismissal are hinged on broad principles of sovereign immunity contained in several federal statutes, including the SIAA and the Federal Tort Claims Act ("FTCA"). As the Government points out, the FTCA expressly retains sovereign immunity for defamation claims asserted by private parties against the government. *See* 28 U.S.C. § 2680(h). Thus, if a plaintiff sues the government for defamation under the FTCA, that claim would be barred. While the SIAA contains no similar language making the government immune from defamation claims, the Government contends that "the defamation exception to the waiver of sovereign immunity contained in the FTCA should be imputed to the SIAA." (Gov. Mem. at 2).

The Government argues that the defamation exception to the FTCA should be incorporated into the SIAA to bar this suit for three reasons. First, the Government contends that courts have recog-

---

1. The Government also cites Rule 12(h)(3) as a basis for dismissal. Motions brought pursuant to Rule 12(h)(3) are subject to the same standards as motions to dismiss for want of subject matter jurisdiction brought pursuant to Rule 12(b)(1). *See Berkshire Fashions, Inc. v. M.V. Hakusan II,* 954 F.2d 874, 880 n. 3 (3d Cir.1992) (motions under 12(b)(1) and 12(h)(3) are governed by identical standards except that the latter may be asserted at any time and need not be responsive to a pleading); *Brotman v. United States,* 111 F.Supp.2d 418, 420 n. 1 (S.D.N.Y.2000). Accordingly, the Government's motion will be construed as a motion to dismiss pursuant to Rule 12(b)(1).

nized that several other FTCA exceptions should be imputed to the SIAA. For example, the Government notes that the discretionary function, law enforcement, and *Feres* exceptions [2] to the FTCA have been judicially-imputed into the SIAA. Thus, the Government suggests that the FTCA's defamation exception should similarly be imputed into the SIAA to bar Plaintiff's claim. Moreover, the government argues that the legislative history of the SIAA shows that in amending the SIAA, Congress inadvertently omitted the FTCA exceptions when it amended the SIAA to include essentially all admiralty tort actions against the government, even those maritime actions that had been previously adjudicated under the FTCA. Finally, the government contends that the libel and slander exceptions should be imputed to the SIAA for public policy reasons. The court first begins by considering the plain language of the SIAA, and then addresses each of the Government's arguments in turn.

## A. Sovereign Immunity and the Plain Language of the SIAA

■ As sovereign, the United States is immune from suit unless it specifically consents to be sued or expressly waives its sovereign immunity. *See Buchanan v. Alexander*, 45 U.S. 20, 4 How. 20, 11 L.Ed. 857 (1846). If sovereign immunity applies, a court lacks subject matter jurisdiction. *See United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

Numerous courts have noted that the SIAA constitutes a broad waiver of sovereign immunity. *See, e.g., McMellon v. United States of America*, 387 F.3d 329, 332, 335 (4th Cir.2004) (noting that when Congress enacted the SIAA in 1920, "the Act did not include any exceptions to its waiver of sovereign immunity for the cases that fell within its scope."); *U.S. Fire Ins. Co. v. U.S.*, 806 F.2d 1529, 1535 (11th Cir.1986) ("Both the PVA and the Suits in Admiralty Act (SAA) contain broad waivers of sovereign immunity. . . ."); *Montego Bay Imports, Ltd. v. U.S.*, 1990 WL 98044, at *1, *3 (S.D.Fla. Jan. 2, 1990). The SIAA grants the courts admiralty jurisdiction in essentially all admiralty tort claims that could be asserted against the government. *McMellon*, 387 F.3d at 336–37. The SIAA authorizes *in personam* admiralty actions against the United States "in cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained." 46 U.S.C. app. § 742.

■ The Supreme Court has stated repeatedly that the plain language of a statute is the best evidence of Congressional intent. *See., e.g., Holloway v. United States*, 526 U.S. 1, 6, 119 S.Ct. 966, 143 L.Ed.2d 1 (1999). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to

---

**2.** The discretionary function exception exempts the United States' waiver of sovereign immunity in cases where the government's actions are discretionary in nature and involve an element of judgment or choice. *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The law enforcement exception exempts federal officials from damage suits resulting from the exercise of their legitimate law enforcement activities. 28 U.S.C. § 2680(c). In *Feres v.*

*United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court excepted from permissible tort claims against the United States those actions based on injuries to service members that occur incident to military activity. The Court has continued to support immunity in such military matters. *See, e.g., United States v. Johnson*, 481 U.S. 681, 692, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987).

enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). In 1960, Congress amended the SIAA to clarify the Act's jurisdiction over admiralty tort actions, fourteen years after Congress enacted the FTCA. *See McMellon*, 387 F.3d at 336–37. Importantly, the 1960 amendments did not add any of the FTCA's exceptions to the SIAA's waiver of sovereign immunity. Moreover, the SIAA clearly and unequivocally provides that an *in personam* admiralty action may be brought against the government if such an action could be maintained against a private person. 46 U.S.C. app. § 742. Thus, the plain language of the SIAA reflects Congressional intent that the FTCA's defamation exception should not be excluded from the waiver of sovereign immunity. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002) (explaining that when construing a statute, "the first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." (citations and internal quotation marks omitted)).

In *McMellon*, a recent en banc opinion of the Fourth Circuit Court of Appeals, the court agreed with this proposition. The court explicitly stated that the language of the SIAA provided an unambiguous waiver of sovereign immunity for all claims brought pursuant to the statute. *See McMellon*, 387 F.3d at 340 ("The waiver of sovereign immunity contained within the SIAA, however, is clear and unequivocal. . . ."). In considering whether to impute the discretionary function exception, the majority reasoned that "the plain language of the SIAA seems to reflect a Congressional intent that discretionary acts should *not* be excluded from the waiver of sovereign immunity." *Id.* at 340. Further, the court rejected the Government's argument that the legislative history of the statute supported imputing a discretionary function exception. *Id.* In short, the court reasoned that it could not "conclude that Congress clearly intended for the SIAA's waiver of sovereign immunity to be subject to an exception for discretionary functions, nor [could it] reach that conclusion by resort to traditional tools of statutory construction." *Id.*[3]

■ The Fifth Circuit's reasoning in *B & F Trawlers, Inc. v. United States*, 841

---

**3.** In *McMellon*, after finding that the legislative history and statutory text did not support imputing an exception into the SIAA, the court went on to conclude that the exception should nonetheless be imputed because of "separation-of-power principles." *Id.* This holding received much criticism in partial dissents by Judges Motz, Michael, Luttig, Widener, Gregory, and Neimeyer. Much of the criticism focused on the fact that while the court found that the statute was unambiguous, and that the legislative history was clear, it decided to impute an exception for essentially policy reasons. *See McMellon*, 387 F.3d at 358 (Motz, J, dissenting) ("That the SIAA waiver of sovereign immunity plainly does not include, and Congress did not intend it to include, a discretionary function exception would seem to require a court to simply apply the Act without the exception. The majority's insistence on 'read[ing]' a discretionary function exception 'into' the SIAA, particularly after its excellent statutory analysis, puzzles me."); *Id.* at 363 (Luttig, J, dissenting) ("By every traditional measure of statutory interpretation, the waiver of the federal government's immunity from suit in the SIAA must be read *not* to include an exception for discretionary functions. . . . Despite its own acknowledgment of the conclusive nature of the statutory text and legislative history, however, the majority holds that it is nevertheless 'required' by separation-of-powers principles to 'read into the SIAA's waiver of sovereign immunity a discretionary function exception. . . .' ").

F.2d 626 (5th Cir.1988), is also particularly instructive. In *B & F Trawlers*, the Fifth Circuit refused to impute the law enforcement exception contained in the FTCA into the SIAA. In so doing, the court reasoned that

> Neither the Supreme Court nor any other circuit court has been asked to incorporate the FTCA law enforcement exception into the SIAA and PVA. Until we are persuaded otherwise, we decline to do so. Congress enacted the SIAA and PVA in 1920 and 1925, respectively. When Congress enacted the FTCA in 1948, it did not incorporate the numerous liability exceptions therein into the SIAA and PVA. Forty more years have elapsed since the FTCA became law, and Congress still has not modified or amended the SIAA ... to incorporate any FTCA exceptions. Confronted with such a lengthy period of legislative silence, we hesitate to rewrite the SIAA ... as requested by the government. If the law enforcement exception is to be engrafted into the SIAA and PVA, then the grafting should be done by legislative surgeons, not judicial surgeons.

841 F.2d at 628–29. Likewise, this court has not found, nor has the government provided, any Supreme Court or circuit court cases wherein the court has been asked to read the FTCA's defamation exception into the SIAA. As a result, the court declines to impute this exception into the SIAA until the Congress decides to act. *See Smith v. United States,* 507 U.S. 197, 203, 113 S.Ct. 1178, 122 L.Ed.2d 548 (holding that "courts cannot assume the authority to narrow the waiver that Congress intended."); *Rayonier Inc. v. United States,* 352 U.S. 315, 320, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957) ("There is no justification for this Court to read exemptions into the [FTCA] beyond those provided by Congress. If the Act is to be altered that is a function for the same body that adopted it.").[4] As the Fourth Circuit stated in *McMellon,* "[c]ontrary to the government's suggestion, we simply cannot create an ambiguity in the SIAA by looking to the language and structure of the FTCA." *McMellon,* 387 F.3d at 340. Accordingly, the government's motion to dismiss must be denied.

**B. Legislative History**

■ To the extent that the Government raises an argument that the legislative history of the SIAA supports imputation of the defamation exception (i.e., that the def-

---

4. Moreover, the court's decision not to impute the defamation exception is consistent with a number of courts' decisions which have allowed slander and libel claims to proceed under the SIAA. In *Guidry v. Durkin,* 834 F.2d 1465, 1470–71 (9th Cir.1987), the Ninth Circuit allowed a private plaintiff to bring a defamation claim against a government employee under the SIAA. In *Foster v. United States,* 156 F.Supp. 421, 423 (S.D.N.Y.1957), the plaintiff sought to recover against the government for slander, libel, and unlawful imprisonment. The court similarly allowed the defamation charges and noted that the plaintiff

> [b]eing precluded from a suit under the Federal Tort Claims Act by its express reservation of sovereign immunity against claims based upon libel, slander, malicious

prosecution or false imprisonment, libelant must seek his recovery against the respondent, United States, under the Public Vessels Act, 46 U.S.C. § 781 et seq. Section 2 of that Act provides that suits under it shall be in accordance with the provisions of the Suits in Admiralty Act. Section 2 of the [SIAA] (46 U.S.C. § 742) provides for suits against the government as follows: "In cases where if such vessel were privately owned or operated ... a proceeding in admiralty ... may be brought against the United States...."

156 F.Supp. at 423 (citations omitted); *see also Cabales v. United States,* 300 F.Supp. 1323, 1325 (S.D.N.Y.1968) (stating that the plaintiff's claim for libel and slander could only be remedied under the Suits in Admiralty Act).

amation exception was inadvertently left out of the SIAA), the court rejects this argument on the basis that it need not consider legislative history when, as here, the terms of the statute are clear. *See General Dynamics Land Systems, Inc. v. Cline,* 540 U.S. 581, 124 S.Ct. 1236, 1252, 157 L.Ed.2d 1094 (2004) ("the statute is clear, and hence there is no need to delve into the legislative history . . . ."). Even if the court were to consider the legislative history, it could not agree that Congress "inadvertently" left out the defamation exception in crafting the SIAA, as the Fourth Circuit explicitly rejected this argument in *McMellon. See McMellon,* 387 F.3d at 339 ("If the exception remained as important to Congress in 1960 when it amended the SIAA as it was when the FTCA was enacted, then it stands to reason that Congress would have written the exception into the SIAA then, particularly since the 1960 SIAA amendments transferred jurisdiction over a number of claims from the FTCA to the SIAA."). In short, the court is extremely reluctant to find Congress mistakenly overlooked something as important as an exception to its waiver of sovereign immunity. *See, e.g., Binder v. Long Island Lighting Co.,* 933 F.2d 187, 193 (2nd Cir.1991) ("Congress enacted the ADEA in the wake of Title VII, and we believe that any omission in the text of the ADEA of a provision found in Title VII is likely to reflect a deliberate decision on Congress's part."). Given this, the court is unwilling to read into the statute something that Congress has failed, over many years, to include. *See,*

*e.g., Keene Corp. v. United States,* 508 U.S. 200, 208, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (recognizing courts' "duty to refrain from reading a phrase into the statute when Congress has left it out."); *Erlenbaugh v. United States,* 409 U.S. 239, 247, 93 S.Ct. 477, 34 L.Ed.2d 446 (1972) (refusing to read into one statute an exception from another "without an affirmative indication" that Congress intended this, especially when doing so would "carve a substantial slice" from the statutory coverage).

### C. Imputation of Other Exceptions into the SIAA

The Government spends the majority of its brief in support of dismissal arguing that because three exceptions contained (or judicially-crafted) into the FTCA have been imputed into the SIAA, the defamation exception should similarly be imputed. While the court finds that the plain language of the SIAA controls and thus provides an adequate basis for denying the Government's motion to dismiss, the court addresses the Government's policy arguments nonetheless. The court only addresses the Government's argument with respect to the discretionary function exception, as this is the only statutory exception in the FTCA that has been widely imputed into the SIAA.[5]

■ The discretionary function exception exempts the United States' waiver of sovereign immunity in cases where the government's actions are discretionary in

5. Only one court of appeals has imputed the law enforcement exception of the FTCA into the SIAA, and another has explicitly refused to do so. *See Mid–South Holding Co. v. United States,* 225 F.3d 1201, 1204 (11th Cir.2000) (imputing the law enforcement exception); *but see B & F Trawlers,* 841 F.2d at 628–29 (refusing to impute the law enforcement exception). With respect to the *Feres* exception, this is a judicially-crafted doctrine that was never contained in the FTCA. Thus, the fact that the courts—the engineers of the *Feres* doctrine—apply the doctrine equally to FTCA and SIAA provides no insight into whether Congress intended the court to read the defamation exception contained in the text of the FTCA into the SIAA.

nature and involve an element of judgment or choice. *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). In *McMellon,* the Fourth Circuit concluded that the FTCA's discretionary function exception applies to the SIAA. 387 F.3d at 331. As discussed earlier, the court reasoned that the exception should be imputed to the SIAA based on the separation of powers doctrine. *Id.* at 340. The concept of separation of powers divides the delegated powers of the government into three branches and attempts to protect each branch from being impaired in its performance by the other branches. *INS v. Chadha,* 462 U.S. 919, 951, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *see also Miller v. French,* 530 U.S. 327, 341, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) ("While the boundaries between the three branches are not 'hermetically' sealed, the Constitution prohibits one branch from encroaching on the central prerogatives of another.") (citations and internal quotation marks omitted).

The *McMellon* court's reasoning in imputing the discretionary function exception on the basis of separation of powers concerns is based on the Supreme Court's ruling in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 810, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). As the *Varig Airlines* Court explained, the discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *Varig,* 467 U.S. at 808, 104 S.Ct. 2755. As the *McMellon* court noted, "although *Varig* does not use the phrase 'separation of powers,' the Court's explanation of the purpose beyond the exception makes it clear that the exception is a statutory embodiment of separation-of-powers concerns." The *Varig* Court stated

Congress wished to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. By fashioning an exception for discretionary governmental functions, including regulatory activities, Congress took steps to protect the Government from liability that would seriously handicap efficient government operations.

*Id.* at 814, 104 S.Ct. 2755 (internal quotation marks omitted); *see also Payton v. United States,* 636 F.2d 132, 143 (5th Cir. 1981).

■ This court does not believe that allowing the judiciary to consider whether executive officials committed defamation interferes with the other branches' administrative decisions. This conclusion requires an understanding of the typical discretionary functions for which the Government must be shielded from liability from. Examples of these sorts of discretionary functions include the government deciding to build a dam across a particular navigable waterway, the Coast Guard participating in drug-interdiction activities, or the National Oceanic and Atmospheric Administration failing to predict a dangerous storm. *See McMellon,* 387 F.3d at 342; *see also Coates v. United States,* 181 F.2d 816, 817 (8th Cir.1950) (concluding that the plaintiffs' claim for damage to property caused by the government's decision to change the course of the Missouri River was barred by the discretionary function exception); *Mid–South Holding Co. v. United States,* 225 F.3d 1201, 1206–07 (11th Cir.2000) (concluding that discretionary function exception precluded claim against government for damages to a private vessel that occurred during Coast Guard's search for drugs).

Here, the Government argues that "because slander and libel suits are often based on the actions of government officials performing the administrative functions of the executive branch," separation of powers principles prohibit judicial review. In the court's opinion, the Government's argument misstates Plaintiff's complaint. Plaintiff does not complain about any administrative function of the Government. Plaintiff does not argue that this court should overturn the Government's executive-branch decision to remove him from his Chief Steward position. Presumably, this removal was undertaken by Government officials acting in their official capacities pursuant to administrative requirements, and following *McMellon, the* separation of powers principles might apply. Instead, Plaintiff complains of the incidents that occurred after his removal— the allegation that government officers "spread the word" that he poisoned people. (Compl.¶ 30.) Assuming for the purposes of this motion that Plaintiff's allegations of defamation are meritorious, this sort of behavior by the Government cannot be required by administrative policy or be considered an executive function. In short, as defamation is an intentional tort, the court sees no reason, or overarching principle of separation of powers, that requires it to absolve the Government of liability for such actions.

## IV. *CONCLUSION*

It is therefore **ORDERED** that Defendant's Motion to Dismiss is **DENIED**.

**AND IT IS SO ORDERED.**