**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RAMANAND PERSAUD,

     Plaintiff - Appellant,

v.

JOHN DOE; T. BUTTS; DR. TOM F.
GOFORTH; L. WALKER; T. KELSO;
C. WILLIAMS; E. BARBY; J.
PARKER; UNITED STATES OF
AMERICA,

     Defendants - Appellees.

No. 06-6234
(D.C. No. CIV-05-09-R)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **McKAY**, and **LUCERO**, Circuit Judges.[**]

     Ramanand Persaud, a federal inmate appearing pro se, appeals from the

district court's grant of summary judgment in favor of defendants, John Doe, T.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

[**] After examining the briefs and the appellate record, this three-judge
panel has determined unanimously that oral argument would not be of material
assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th
Cir. R. 34.1(G). The cause is therefore ordered submitted without oral argument.

Butt,[1] Tom F. Goforth, L. Walker, T. Kelso, C. Williams, E. Barby, J. Parker, and the United States of America. On February 19, 2004, federal authorities transferred Mr. Persaud from a Federal Correctional Institute ("FCI") in Elkton, Ohio ("FCI Elkton") to an FCI in Schuykill, Pennsylvania ("FCI Schuykill"). En route, Mr. Persaud was housed temporarily for nearly two months at the Federal Transfer Center at Oklahoma City, Oklahoma ("FTC OKC"). Mr. Persaud claims that during transfer defendant Doe's actions, or lack thereof, caused injury to his left ankle and that he subsequently received inadequate medical treatment upon arrival at FTC OKC.

As a result, Mr. Persaud brought an action against defendants pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)(1), alleging that: during his transfer between federal prisons, defendants secured his legs using metal ankle cuffs, rather than flexicuffs, as allegedly required in his medical records; the metal ankle cuffs caused severe pain and bleeding because they rubbed against steel screws previously surgically inserted in his left ankle; and that defendants were deliberately indifferent to his medical needs during this time. The district court referred the matter to a magistrate judge and, after resolving Mr. Persaud's objections to the magistrate's report and

---

[1] In the caption to this case, Ms. Butt is referred as Ms. Butts. Seeing as the defendants' submissions consistently refer to her as Ms. Butt, however, we will do the same.

recommendation, granted summary judgment to defendants. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. Hackworth v. Progressive Cas. Ins. Co., 468 F.3d 722, 725 (10th Cir. 2006). Summary judgment is appropriate only where there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

I.     Mr. Persaud's Bivens claims against Defendants Butt and Goforth

Mr. Persaud's Bivens claims against Defendants Butt and Goforth allege that both defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. At the time of Mr. Persaud's transfer, Ms. Butt was the associate warden at FTC OKC and Dr. Goforth was the Clinical Director of the medical clinic at OKC. Both Ms. Butt and Dr. Goforth argued below that they were entitled to summary judgment because Mr. Persaud failed to bring forth sufficient evidence that they were directly or personally involved in any decisions about Mr. Persaud's medical care, and the district court agreed.

In order to establish Bivens liability, a plaintiff is required to bring forth evidence that an individual defendant directly and personally participated in the purported constitutional violation. See Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1214 (10th Cir. 2003), cert. denied, 543 U.S. 925 (2004). As to Ms. Butt, Mr. Persaud alleges in his complaint that, nearly a month after he arrived at FTC

OKC, Ms. Butt "personally saw and interviewed [Mr.] Persaud in regards to the leg injury, advising [Mr.] Persaud to contact [Dr.] Goforth." R. Doc. 1 at 14; see also id. at 8. Mr. Persaud also maintains that Ms. Butt claimed she would take steps to get him on a flight to Philadelphia as soon as possible. Id. at 8. For her part, Ms. Butt notes that Mr. Persaud's medical records do not indicate that he complained to her about an injury or that she referred him for medical care. R. Doc. 49, Ex. 2 at 1. Moreover, she has no memory of Mr. Persaud or of an inmate with the injury he describes. Id. Viewing the evidence in the light most favorable to Mr. Persaud, he has failed to create a genuine issue of material fact as to Ms. Butt's direct and personal involvement in any alleged deliberate indifference to his medical needs.

The evidence only indicates that Ms. Butt, when presented with Mr. Persaud's complaint, attempted to help him (as she would any inmate) by informing him of the proper individual (Dr. Goforth) to contact within FTC OKC. After all, Ms. Butt is not a medical doctor and could not have treated Mr. Persaud herself. Also, the fact that Ms. Butt may have promised to transport him to Philadelphia in an expeditious manner does not constitute deliberate indifference given that he was seen at FTC OKC. As a result, the district court correctly determined that Ms. Butt is entitled to judgment as a matter of law.

The only concrete allegation Mr. Persaud asserts against Dr. Goforth is that the doctor "personally reviewed oral statements and written documentation in

- 4 -

regards to [Mr.] Persaud's leg injury."  R. Doc. 1 at 17; <u>see also</u> Aplt. Br. at 20.

Dr. Goforth claims that "[t]he medical records indicate that I never saw or

examined plaintiff while he was at the FTC."  R. Doc. 49 Ex. 1 at 2.  The doctor

also claims that Ms. Butt never mentioned Mr. Persaud, let alone referred Mr.

Persaud to him.  <u>Id.</u>  Taking Mr. Persaud's allegation at face value, the evidence

indicates only that Dr. Goforth reviewed Mr. Persaud's medical file (and later

expressed the opinion that the treatment received by Mr. Persaud was within the

applicable standard of care, i.e. non-negligent).  <u>Id.</u>  This is insufficient, as a

matter of law, to directly and personally implicate Dr. Goforth in the alleged

deliberate indifference to Mr. Persaud's medical needs, and Dr. Goforth was

entitled to summary judgment.

II.     Mr. Persaud's <u>Bivens</u> claims against defendants Barby, Kelso, Parker and
        Walker

Mr. Persaud also claims that defendants Barby, Kelso, Parker and Walker

were deliberately indifferent to his serious medical needs in violation of the

Eighth Amendment.[2]  The government sought summary judgment on the grounds

that during his stay at FTC OKC, Mr. Persaud was seen five times by medical

personnel for various complaints, and was treated appropriately, particularly

---

[2] In his appellate brief, Mr. Persaud also argues that Sandra J. Craiger, a physician's assistant at FTC OKC, was also deliberately indifferent to his medical needs.  <u>See</u> Aplt. Br. at 8-9.  Ms. Craiger, however, has not been named as a defendant in this action.

given that he did not mention the problem during some of those visits. The government also maintained that his problem was caused not by the metal ankle cuffs, but rather by his increase in work, which aggravated a pre-existing injury which had been treated with surgical screws to stabilize the bone. Finally, the government maintains that in May 2004, Mr. Persaud had successful surgery to remove the loose surgical screws from his left ankle. The district court granted summary judgment to these defendants on the ground that Mr. Persaud "failed to point to any evidence of deliberate indifference by these Defendants of a serious health risk to [Mr. Persaud] or evidence which creates a genuine issue for trial." R. Doc. 86 at 2.

The Eighth Amendment creates an obligation on the part of prison officials to provide adequate health care to inmates. Estelle v. Gamble, 429 U.S. 97, 103 (1976). This does not mean, however, that a mere complaint that a physician has been negligent in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment. Id. at 106. Rather, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. This standard is met when (1) there is a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000), and (2) a prison official "knows of and disregards an excessive risk to

inmate health or safety," Farmer v. Brennan, 511 U.S. 825, 837 (1994).

On February 23, 2004, four days after Mr. Persaud arrived at FTC OKC, defendant Barby, an advanced registered nurse practitioner, treated Mr. Persaud. This was the one and only time Mr. Barby treated Mr. Persaud. While Mr. Persaud maintains that he informed the medical staff at FTC OKC of his ankle pain during each of his medical checkups, the medical records do not bear this out. Mr. Persaud's medical chart for the February 23 checkup with Mr. Barby does not indicate that Mr. Persaud complained of ankle pain. Rather, the chart indicates only that Mr. Persaud was provided with an over-the-counter antihistamine. R. Doc. 39 Ex. 2 at 3. Because Mr. Persaud has brought forth no evidence, other than conjecture, to indicate that Mr. Barby knew of Mr. Persaud's ankle pain, summary judgment in Mr. Barby's favor was appropriate.

Ms. Kelso, also an advanced registered nurse practitioner employed at FTC OKC, saw Mr. Persaud on two occasions—February 26, 2004 and March 2, 2004. Mr. Persaud's medical record indicates that Mr. Persaud, again, did not complain of ankle pain during his visit with Ms. Kelso on February 26. Instead, he complained of athlete's foot and was prescribed an antifungal cream. Id. Mr. Persaud's first complaint to FTC OKC staff regarding ankle pain occurred during his March 2 visit with Ms. Kelso. See id. As to that visit, Ms. Kelso states that "[u]pon examination, I found the pedal pulse to be normal. No deformity was

evident and the skin was intact (no broken skin)." R. Doc. 48 Ex. 3 at 1.[3]  In

response to his complaint, Ms. Kelso prescribed Mr. Persaud over-the-counter

pain medication and wrapped the ankle.  R. Doc. 39 Ex. 2 at 3.  Based on the

foregoing, no reasonable jury could find that Ms. Kelso was deliberately

indifferent to Mr. Persaud's medical needs.  When informed of Mr. Persaud's

ankle pain, Ms. Kelso responded with treatment—though Mr. Persaud disputes the

efficacy of that treatment, he cannot establish deliberate indifference.

Accordingly, the district court properly entered summary judgment for Ms. Kelso.

Ms. Parker, an advanced registered nurse practitioner employed at FTC

OKC as an independent contractor, saw Mr. Persaud on two occasions.  During

the first visit, on March 18, 2004, Ms. Parker notes that "[Mr. Persaud] did not

complain of or present symptoms consistent with significant ankle pain."  R. Doc.

53 Ex. A at 2.  Mr. Persaud's medical records indicate that, nonetheless, Ms.

Parker, consistent with prison policy, prescribed Mr. Persaud an over-the-counter

pain medication.  R. Doc. 39 Ex. 2 at 4.  The medical records show that during

Mr. Persaud's second visit with Ms. Parker, on March 23, 2004, Mr. Persaud did

not complain of ankle pain, and was prescribed antifungal cream for athlete's

foot.  Id.  Viewing the evidence in the light most favorable to Mr. Persaud, it

appears that Ms. Parker cannot be deemed deliberately indifferent and was thus

---

[3]  A week later, on March 9, 2004, in a visit with defendant C. Williams,
Mr. Persaud rated the pain he was experiencing in his ankle, on a scale of one
through ten, as a four.  R. Doc. 39 Ex. 2 at 3.

properly granted summary judgment.

Finally, defendant Walker, a physician's assistant with the Bureau of Prisons, treated Mr. Persaud on March 26, 2004. This was the last time Mr. Persaud was treated at FTC OKC. Mr. Walker's notes in the medical records pertaining to Mr. Persaud's March 26 checkup are devoid of any mention of ankle pain. See R. Doc. 39 Ex. 2 at 4; see also R. Doc. 48 Ex. 4 at 1. Rather, according to Mr. Walker, he examined Mr. Persaud and prescribed him antibiotic ointment for chapped lips or skin. R. Doc. 48 Ex. 4 at 1; see also R. Doc. 39 Ex. 2 at 4. Mr. Persaud has brought forth absolutely no evidence, other than his own uncorroborated allegations, that Mr. Walker was even aware that Mr. Persaud was suffering ankle pain. And this lack of evidence as to awareness is fatal to Mr. Persaud's deliberate indifference claim against Mr. Walker.

III.    Mr. Persaud's claims against defendants Doe and Williams.

Mr. Persaud also pressed deliberate indifference claims against John Doe, an unknown release and delivery officer at FCI Elkton, and C. Williams, a member of the medical staff at FTC OKC. The district court dismissed these claims without prejudice for failure to timely and properly effect service of process. See R. Doc. 86 at 4. Because Mr. Persaud's appellate brief makes no mention of the district court's dismissal as to these claims and does not argue why the district court may have been in error, the district court's dismissal of these claims is affirmed. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th

Cir. 1998) ( "Arguments inadequately briefed in the opening brief are waived . . . ."); Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir.1994) (observing that appellant's pro se status does not excuse him from "comply[ing] with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure"); Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990) (holding issue not argued in appellate brief is waived).

IV.    Mr. Persaud's FTCA claims against the United States of America

Like the district court, we liberally construe Mr. Persaud's complaint to allege two FTCA claims against the United States: (1) negligence based on an unknown release and delivery officer's failure to use flexicuffs, instead of metal cuffs, on Mr. Persaud's ankles during transport, and (2) negligence based on the failure of the FTC OKC medical staff to properly treat Mr. Persaud's alleged ankle injury.

The "test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." Rayonier, Inc. v. United States, 352 U.S. 315, 319 (1957).  Negligence, of course, is a recognized cause of action in Oklahoma, requiring a plaintiff to show "(1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure properly to exercise or perform that duty, and (3) an injury to plaintiff proximately caused by the defendant's breach of that duty." Akin v. Missouri Pac. R.R. Co., 977 P.2d 1040,

1054 (Okla. 1998).

As noted, Mr. Persaud first claims that the United States should be held liable because its employee, the unknown release and delivery officer, failed to restrain Mr. Persaud's ankles with flexicuffs during transport. Mr. Persaud argues that, at the time of transport, there existed a medical directive requesting that prison personnel use flexicuffs on his ankles, and that the release and delivery officer was negligent in denying "reasonable requests to follow medically directed conduct." R. Doc. 1 at 10. While Mr. Persaud is correct that, at one time, there existed a Medical Report of Duty Status ("Report") that requested prison officials to use flexicuffs, that Report expired on December 3, 2003. See R. Doc. 39 Ex. 2 at 25. The existence of that Report demonstrates that Mr. Persaud was more than capable of informing medical personnel as to his ankle pain and that, when appropriate, the staff would recommend the use of flexicuffs. No other report in Mr. Persaud's medical file, however, requests that flexicuffs be used. See id. at 26-32. In fact, the form filled out exclusively for the purpose of Mr. Persaud's transfer between FCI Elkton and FCI Schuykill indicates no medical condition whatsoever. See id. at 31. The logical conclusion, therefore, is that Mr. Persaud failed to inform the medical staff at FCI Elkton that he had an ankle condition or that he did indeed inform them but they either disregarded the information or concluded that his condition was not so severe as to merit a recommendation of flexicuffs. Mr. Persaud has not brought suit,

- 11 -

however, against the United States based on any purported negligence of the medical staff at FCI Elkton. Rather, he bases his claim on the actions of an officer involved in his transfer, but considering the lack of an unexpired recommendation or requirement of flexicuffs in Mr. Persaud's medical files at the time of transfer, there is no evidence that the release and delivery officer failed to take a medically directed action. As such, the basis for Mr. Persaud's first negligence claim against the United States fails.

Mr. Persaud also asserts a negligence claim against the United States based on an alleged failure of the medical staff at FTC OKC to properly treat his ankle wounds. In Oklahoma, the elements of a medical malpractice claim are identical to those in any other negligence claim. See Roberson v. Jeffrey M. Waltner, M.D., Inc., 108 P.3d 567, 569 (Okla. Civ. App. 2005). Additionally, "in all but the extraordinary medical malpractice case, the plaintiff has the burden of producing expert testimony to support a prima facie case of negligence." Id. This is not an "extraordinary medical malpractice case," and because Mr. Persaud has failed to present any expert evidence, his second basis for a negligence claim against the United States similarly fails. See Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1117 (10th Cir. 2004) (concluding that "the Colorado review statute is applicable to professional negligence claims brought against the United States under the FTCA" and dismissing the plaintiff's FTCA claim for failure to file a certificate of review).

V.    Mr. Persaud's Motion for Sanctions

Mr. Persaud argues that the district court erred in failing to sanction defendants as a result of their alleged failure to turn over certain requested documents.  We review for an abuse of discretion the district court's ruling rejecting Mr. Persaud's motion for sanctions. See, e.g., Augustine v. United States, 810 F.2d 991, 996 (10th Cir. 1987) ("The refusal to impose sanctions is solely within the discretion of the trial court, to be reversed only when that discretion is abused.").  It appears that Mr. Persaud's primary basis for sanctions is defendants' purported failure to turn over an expired "Duty Status Report" along with "all documents regarding [his] transfer to [FCI] Schuykill . . . ." Aplt. Br. at 21-22.  Mr. Persaud, however, was given a copy of a special report, compiled specifically for this litigation by the Bureau of Prisons, which contains numerous medical records relating to Mr. Persaud's transfer to FCI Schuykill and his subsequent medical care.  Among the medical records contained within the special report was the expired Medical Duty Status Report. See R. Doc. 39 Ex. 2 at 25.  Mr. Persaud also fails to indicate what documents relating to his transfer to FCI Schuykill defendants have failed to hand over.  Thus, the district court did not abuse its discretion in denying Mr. Persaud's motion for sanctions.

AFFIRMED.  We grant Mr. Persaud IFP status, and remind him of his continuing obligation to make partial payments until the filing fee is paid.


Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge