# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3245

_____

| | | |
|---|---|---|
| Sandy LaFromboise, individually, | * | |
| and on behalf of her minor son, | * | |
| Robert LaFromboise, Jr., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for |
| | * | North Dakota. |
| Michael O. Leavitt, as the Secretary | * | |
| of the Health and Human Services | * | |
| Department;[1] Indian Health Service; | * | |
| United States of America, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: May 13, 2005
Filed: March 2, 2006

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Sandy LaFramboise, individually and on behalf of her son Robert, filed suit against the United States, the Secretary of Health and Human Services, and the Indian

---

[1]The Honorable Michael O. Leavitt is automatically substituted for his predecessor, pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Health Service under the Federal Tort Claims Act ("FTCA").  LaFramboise claimed that her son had been a victim of medical malpractice at the Quentin N. Burdick Memorial Comprehensive Health Care Facility, an Indian Health Service facility located on the Turtle Mountain Indian Reservation in Belcourt, North Dakota.  The defendants moved for summary judgment on the ground that LaFramboise failed to file an expert affidavit within three months of filing suit, as required by North Dakota law in medical malpractice cases.  The district court[2] treated the motion for summary judgment as a motion to dismiss and dismissed the action without prejudice.  LaFramboise appeals, arguing that she was not required to comply with North Dakota law because tribal law governs instead.  We affirm.

The Federal Tort Claims Act waives sovereign immunity, and gives federal district courts jurisdiction, with respect to claims

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with *the law of the place* where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  This case turns on what the statute means by "the law of the place."

The alleged medical malpractice involved here occurred within the territory of the Turtle Mountain Indian Reservation, which is in turn within the territory of the State of North Dakota.  The law of those two jurisdictions governing medical malpractice claims differs in a material respect:  North Dakota law requires

---

[2]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

-2-

LaFramboise to file a supporting affidavit from a medical expert within three months of commencing her action, N.D. Cent. Code § 28-01-46 (2003), while tribal law contains no such requirement. The district court, applying North Dakota law, dismissed the action because LaFramboise failed to file the required affidavit. In considering whether the dismissal was warranted, therefore, we must determine whether "the law of the place" means the law of the State, *i.e.*, North Dakota, or the law of the tribal reservation.

It frequently has been assumed, at least where an act occurs within the boundaries of *some* State (as opposed to a territory, such as the District of Columbia or Guam), that "the law of the place" means "the law of the State." The Supreme Court has "consistently held that § 1346(b)'s reference to 'law of the place' means law of the State – the source of substantive liability under the FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994); *see also Rayonier, Inc. v. United States*, 352 U.S. 315, 319 (1957) ("[T]he test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred."); *Richards v. United States*, 369 U.S. 1, 14 n.29 (1962) ("[D]espite the ambiguity that exists in the history due to the fact that Congress did not specifically consider the choice-of-laws problem, the legislative material indicates that Congress thought in terms of state law being applicable."). Our court, in precisely the circumstances at issue here, has applied the law of the State to acts occurring on tribal lands within a State, although the choice-of-law question apparently was not raised or discussed in these cases. *Champagne v. United States*, 40 F.3d 946, 947 (8th Cir. 1994); *Goodman v. United States*, 2 F.3d 291, 292 (8th Cir. 1993) (holding that "[i]n this FTCA case [arising from an alleged tort on the Pine Ridge Reservation], we are, of course, bound to apply the law of the

state in which the acts complained of occurred"); *Kruchten v. United States*, 914 F.2d 1106, 1107 (8th Cir. 1990).[3]

LaFramboise contends that where a tribal court would have jurisdiction over a private person committing the alleged tort, *see Montana v. United States*, 450 U.S. 544, 565-66 (1981), then "the law of the place" for purposes of the FTCA is the law of the tribal reservation.  For this proposition, she relies primarily on the decision in *Cheromiah v. United States*, 55 F. Supp. 2d 1295 (D.N.M. 1999), which stands alone among the district courts to have considered the question of statutory interpretation. *Cf. Fed. Express Corp. v. United States*, 228 F. Supp. 2d 1267, 1269 (D.N.M. 2002); *Bryant v. United States*, 147 F. Supp. 2d 953, 957 (D. Ariz. 2000); *Louis v. United States*, 54 F. Supp. 2d 1207, 1210 (D.N.M. 1999); *Chips v. United States*, Civ. No. 92-5025, slip op. at 3 (D.S.D. Apr. 28, 1993) (cited in *Cheromiah*, 55 F. Supp. 2d at 1306); *Azure v. United States*, Cv-90-68-GF-PGH, slip op. at 9-10 (D. Mont. May 9, 1991) (same).  We now have been presented squarely with the issue, and several considerations lead us to conclude that the law of the place is the law of the State.

First, the plain meaning of the statute – "*the* law of *the* place" – indicates that Congress contemplated a single source of governing law.  LaFramboise's interpretation, by contrast, calls for an inquiry into whether a political entity would have civil authority over an action against private parties arising from the alleged negligence, without any guiding principle to determine which law governs when a State and a tribal court have concurrent jurisdiction.  Her approach, therefore, creates tension with the text, because it envisions that the laws of two places, the State and the tribal reservation, might be applicable. Understanding "place" to mean "State," where

---

[3]*See also Sauceda v. United States*, 974 F.2d 1343, 1992 WL 212325, at *1 (9th Cir. 1992) (unpublished); *Red Lake Band of Chippewa Indians v. United States*, 936 F.2d 1320, 1325 (D.C. Cir. 1991); *Seyler v. United States*, 832 F.2d 120, 121 (9th Cir. 1987); *Bryant v. United States*, 565 F.2d 650, 652-53 (10th Cir. 1977); *Muhammad v. United States*, 366 F.2d 298, 300 (9th Cir. 1966).

an act or omission occurs within a State, is consistent with the statute's use of the singular.

Second, the most apposite precedents from the federal appellate courts support the view that "place" means "State." Numerous decisions hold that where a negligent act occurs within a federal enclave, such as a military base or national park, that is located within the territory of a State, the law of the State applies, notwithstanding that a different political entity – in those cases, the federal government – has civil authority over the land. *E.g.*, *Rayonier*, 352 U.S. at 319 (federally owned land); *Will v. United States*, 849 F.2d 315, 316-17 (8th Cir. 1988) (national park); *Lewis v. United States*, 663 F.2d 818, 819 (8th Cir. 1981) (per curiam) (national monument); *Shankle v. United States*, 796 F.2d 742, 744 (5th Cir. 1986) (military base); *Lutz v. United States*, 685 F.2d 1178, 1182 (9th Cir. 1982) (military base); *Jones v. United States*, 693 F.2d 1299, 1301 (9th Cir. 1982) (national park).

Likewise, in a case involving two States, *Brock v. United States*, 601 F.2d 976 (9th Cir. 1979), the Ninth Circuit persuasively concluded that "place" refers to locality rather than jurisdiction. *Brock* involved an accident at a dam that spanned the Columbia River between Washington and Oregon. The government's alleged negligence occurred in Washington, but it was urged that Oregon had jurisdiction of the area where the negligence occurred, under a federal statute that gave Washington and Oregon concurrent jurisdiction over the Columbia River. The Ninth Circuit rejected the view that "the law of the place" means the law of the political entity that has jurisdiction over the site where the act or omission occurred, and instead endorsed the view that "place" is defined by territorial or political boundaries. *Brock*, 601 F.2d at 979. This holding is consistent with the Supreme Court's decision in *Hess v. United States*, 361 U.S. 314, 318 (1960), which held that the law of Oregon governed an FTCA action involving a death that occurred within Oregon, but also within the reach of federal admiralty jurisdiction. We agree with the Ninth Circuit that the

Supreme Court in *Hess* "apparently equated 'place' with the state as defined by its political or territorial boundaries." *Brock*, 601 F.2d at 979.

Third, we think it unlikely that Congress meant for the liability of the United States to depend on the laws of more than 550 tribal governments throughout the country, *see* http://www.doi.gov/bureau-indian-affairs.html, given the administrative problems that such an interpretation would engender. As the court observed in *Louis*, such an approach "would subject the United States to varying and often unpredictable degrees of liability, depending on the reservation that was the site of the occurrence," and that "[i]n some instances, the difficulty in proving the existence and substance of any tribal law on the subject of the tort would be considerable." 54 F. Supp. 2d at 1210 n.5. Although it is not necessary to our conclusion, we also note that FTCA carefully limits the conditions under which the United States subjects itself to liability, and the scope of waivers of sovereign immunity must be strictly construed. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *cf. Dolan v. United States Postal Service*, No. 04-848, 2006 WL 397935, at *7 (U.S. Feb. 22, 2006) (concluding that presumption in favor of sovereign does not apply when interpreting the scope of exceptions to the government's waiver of immunity under the FTCA). The uncertainty and potential for expanded liability that would follow from interpreting "law of the place" to mean "law of the tribal reservation" counsel against holding that Congress granted such a waiver.

LaFramboise argues at length that the tribal court would have jurisdiction over an action brought by a tribal member against private parties arising from negligence at the medical facility, *see Montana*, 450 U.S. at 565-66, and that North Dakota courts would not have jurisdiction over such an action. *But see Three Affiliated Tribes v. Wold Eng'g, P.C.*, 467 U.S. 138, 148 (1984) (explaining that the Supreme Court "repeatedly has approved the exercise of jurisdiction by state courts over claims by Indians against non-Indians, even when those claims arose in Indian country"). As we have explained, however, the choice-of-law question does not depend on whether

a state court or tribal court would have civil authority over an action against private parties. The identification of the "law of the place" turns on the territorial jurisdiction within which the allegedly tortious acts or omissions occurred, and "[i]t is only after 'the place' has been determined that the government shall become liable as a private claimant would become liable under that state's law." *Brock*, 601 F.2d at 980.

We conclude that the majority of the courts to address the meaning of "the law of the place" have reached the better conclusion, and we join them in holding that where an act or omission occurs within the territorial boundaries of both a tribal reservation and a State, "the law of the place" for purposes of the FTCA is the law of the State. Accordingly, the judgment of the district court is affirmed.

_____